ABE JOHNSON ET AL. *vs.* THE MARY OLIVER CANDY SHOPS, INCORPORATED.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 4th, 1932—decided January 3d, 1933.

BANKS, J. The plaintiff Durham was the lessee of certain premises in Bristol comprising three stores, one of which he sublet to the plaintiff Johnson. By a single writing executed by both plaintiffs as lessors they leased to the defendant a portion of the premises, including a part of the store sublet by Durham to Johnson, for the period of one year from October 1st, 1928, for the annual rental of $1500 payable in monthly payments of $125 each, in advance. The lease granted the lessee "the privilege of renewing this lease upon the expiration thereof for a further period of four years" upon the same terms except that the rent shall be $150 a month, "provided, however, that said lessee shall notify said lessor in writing not less than sixty days before the expiration of this lease of its intention so to do." It further provided that in case the lessee should hold over with the written consent of the lessors it should be upon the same terms, and that "no holding over by said party of the second part shall operate to renew this lease without such written consent of said party of the first part." The defendant entered into possession of the leased premises which it occupied during the term of the lease. It did not at any time notify the plaintiffs that it de-

sired to renew the lease, but on several occasions before the expiration of the year, the plaintiff Durham urged two representatives of the defendant to continue for a further period, and was told by them that if the defendant continued to occupy the premises it would be upon a month to month basis. On October 1st, 1929, as a result of these conversations, Durham executed and delivered to the defendant a writing which provided, in substance, that the defendant might "continue as a tenant" of the premises "until May 15th, 1930," paying the increased rental "as provided in the lease now existing on this store," that "it is quite agreeable that the lease should terminate at that time," but that "it is understood that in case they do decide to terminate [the] lease at this time that they are to give [a] written notice on or before April 15th, 1930." The defendant continued to occupy the premises until May 15th, 1930, giving no notice that it intended to vacate them on that date, and thereafter further continued their occupation, paying rent at the increased rate of $150 a month, up to September 30th, 1931, when it vacated the premises, having notified Durham in July that it would vacate in sixty days. This action is brought to recover rent for the months of October and November, 1931.

The plaintiffs' case is based upon the claim that there was in existence a lease of the premises in question from the plaintiffs to the defendant for the period of four years from October 1st, 1929. It is claimed that a lease arose from the exercise by the defendant of its option under the original lease for a renewal of the lease for a further period of four years. The court reached the conclusion that the option clause in the lease constituted a covenant for a renewal as distinguished from one for an extension and that the defendant was not bound for the further

term of four years in the absence of a new lease for that period. *City Coal Co.* v. *Marcus,* 95 Conn. 454, 111 Atl. 857. A technical distinction has been recognized between a covenant for renewal and one for extension. It has been held that under the former a new lease or at least some affirmative act creating an additional term is required. The question as to which exists may be controlled by the intention of the parties as manifested by the entire lease, or by their practical construction of their contract, whereby the privilege may be construed as one for an extension of the term although it is called one for a renewal. *Ackerman* v. *Loforese,* 111 Conn. 700, 704, 151 Atl. 159. The plaintiffs contend that the option in the lease under discussion should be construed as one for an extension. If they are correct in this, it by no means follows that, upon the facts here present, they can hold the defendant upon an extension of the term for a further period of four years. In the case of a lease in which the lessee is granted the privilege of an extension for a further period, and no notice to the lessor is required as a condition of the exercise of the privilege, it has been held that the mere holding over the original term by the lessee constitutes a sufficient exercise of his option for an extension. *Klein* v. *Auto Parcel Delivery Co.,* 192 Ky. 583, 234 S. W. 213; 16 R. C. L. 895. Where, however, the option, whether of renewal or extension, is conditioned upon the giving of notice to the lessor of the lessee's election to exercise it, the giving of such notice is a condition precedent to the taking effect of the extended term. *Fountain Co.* v. *Stein,* 97 Conn. 619, 623, 118 Atl. 47; 35 C. J. 1020. Since no written notice of an exercise of its option to renew the lease was given the plaintiffs by the defendant as required in the lease, the option expired. On September 30th,

1929, the lease terminated and all rights of both parties thereunder were at an end. Since the requirement of notice is for the benefit of the lessor, he may waive it, and it has been held that, under certain circumstances, the acceptance by the lessor after the end of the term of an increased rent which was to be paid in case of extension may constitute such a waiver of the requirement of notice. 2 Tiffany, Landlord & Tenant, p. 1530. But here it is the landlord who is seeking to hold the tenant to an extension of the term. The lease gives him no such right, the option of an extension or renewal being solely that of the tenant. The claim of the plaintiffs appears to be that the conduct of the defendant in holding over, and paying the increased rental provided for in case of a renewal, constituted an affirmative indication of its election to exercise the privilege of a renewal of the lease for a further period of four years. The mere holding over with the consent of the landlord was not evidence of any agreement for a further lease. General Statutes, § 5021; *Coleman* v. *Brigham,* 115 Conn. 286, 161 Atl. 236. And by the express terms of the lease a holding over did not operate to renew the lease without the written consent of the landlord. The plaintiff Durham did execute a writing extending the tenancy of the defendant until May 15th, 1930, the defendant paying the increased rent which it would have paid under a renewal of the lease. This was a new agreement extending the tenancy of the defendant for a fixed period ending May 15th, 1930. It did not constitute the written consent of the lessors to a renewal of the lease for an additional period of four years, and the defendant's occupancy of the premises under it, and payment of the rent reserved, did not constitute an election to avail itself of the privilege of a renewal of its lease for that period, which privilege had al-

ready expired. The language of this writing is confused and it is not entirely clear what the draftsman had in mind in the provision for a written notice to be given on or before April 15th, 1930. It does seem clear that in no event can it be construed as a written consent to a renewal of the lease for four years, much less a new lease for that period, and that the defendant, by continuing in possession under it, did not obligate itself for a four years' tenancy of the premises.

It appears from the finding that the defendant consistently indicated its intention not to renew the lease, and no correction of the finding which could justifiably be made would require any other conclusion. In its occupation of the premises after May 15th, 1930, the defendant was a tenant from month to month, and was not liable for any rental accruing after it vacated the premises on September 30th, 1931. If, as claimed by the plaintiff Johnson, the arrangement made between his coplaintiff, Durham, and the defendant is not binding upon him, then he has no standing in the case since his right of action, if any, grows out of that very arrangement.

There is no error.

In this opinion the other judges concurred, except MALTBIE, C. J., who dissented.