SEVEN FIFTY MAIN STREET ASSOCIATES LIMITED PARTNERSHIP *v.* HOWARD SPECTOR (2178)

DUPONT, C. J., HULL and LANDAU, Js.

Argued May 11—decision released September 3, 1985

*Barry D. Greene,* with whom were *Glenn T. Terk* and, on the brief, *Marvin S. Bloom,* for the appellant (defendant).

*David M. Roth,* for the appellee (plaintiff).

LANDAU, J. The plaintiff, Seven Fifty Main Street Associates Limited Partnership, brought a summary process action against the defendant, Howard Spector,

doing business as Gilbert Lane Personnel Service, also known as Gilbert Lane Personnel Agency, Inc., to recover possession of commercial premises. The lease governing the parties was for a term of sixty months, running from July 1, 1977, to June 30, 1982. The plaintiff served a notice to quit upon the defendant on or about July 1, 1982, and then instituted a summary process action, claiming that the tenancy of the defendant had terminated by lapse of time upon the expiration of the written lease. By way of special defenses, the defendant contended that the lease had been extended or, alternatively, that equitable considerations should permit an extension or renewal of the lease.

The trial court made the following findings: That paragraph thirty of the lease, which provided that the "[t]enant shall have the right to renew this lease for one additional (5)-five year period at the same rate," was a covenant to renew rather than an agreement to extend the lease, and, as such, required an affirmative act by the defendant to exercise his right to renew; that actions taken by the defendant had not effectively renewed the lease; and that equitable considerations did not dictate a judgment in the defendant's favor. The defendant appeals[1] from the judgment of possession rendered by the trial court.

"The question of whether a lease grants a covenant to renew or an agreement to extend is a question of intent. . . . If the language of the lease is clear and definite, however, the intention of the parties must be gathered from the instrument itself." *Nowesco, Inc.* v. *Community Petroleum Products, Inc.,* 38 Conn. Sup. 585, 587–88, 456 A.2d 340 (1982). Although paragraph thirty of the lease speaks in terms of a "right to renew," such language, in and of itself, is not conclusive. *Blanck*

---

[1] This appeal, originally filed in the Appellate Session of the Superior Court, was transferred to this court. General Statutes § 51-197a (c).

v. *Kimland Realty Co.,* 122 Conn. 317, 319, 189 A. 176 (1937); *Johnson* v. *Mary Oliver Candy Shops, Inc.,* 116 Conn. 86, 89, 163 A. 606 (1933); *Ackerman* v. *Loforese,* 111 Conn. 700, 704, 151 A. 159 (1930). Paragraph twenty of the lease, however, provides in pertinent part that "[i]n the event that the Tenant shall remain in the demised premises after the expiration of the term of this lease without having executed a new written lease with the Landlord, such holding over shall not constitute a renewal or extension of this lease."

The lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. *Central New Haven Development Corporation* v. *LaCrepe, Inc.,* 177 Conn. 212, 214, 413 A.2d 840 (1979). Under paragraph twenty, a mere holding over would not constitute an extension of the lease.

The lower court did not err in finding that paragraph thirty was a covenant to renew rather than an agreement to extend the lease. As such, an affirmative act on the part of the defendant was necessary to exercise his right to renew. *Nowesco, Inc.* v. *Community Petroleum Products, Inc.,* supra, 587.

The defendant also claims as error the trial court's conclusion that he had failed to renew the lease. The trial court found that the defendant orally notified the plaintiff in late December, 1979, or early January, 1980, of his intention to renew the lease. The trial court further found that the defendant mailed a letter to the plaintiff on December 16, 1981, by ordinary mail, informing the plaintiff that he would exercise his right to renew, but that the plaintiff never received the letter. In addition, the trial court found that the defendant had telephoned the plaintiff's building manager on June 30, 1982, after receiving a notice to quit, and had informed her of his desire to renew the lease.

Issues of fact are solely within the province of the trier of fact to decide. *Maresca* v. *Allen,* 181 Conn. 521, 523, 436 A.2d 14 (1980). This court will not disturb the factual findings of the trial court as long as the evidence supports those findings.

Paragraph eighteen of the lease provided that "[a]ll notices and demands, legal or otherwise, incidental to this lease, or the occupation of the demised premises, shall be in writing." Paragraph eighteen also provided that "[n]otices from the Tenant to the Landlord shall be sent by registered mail or delivered to the Landlord at the place herein before designated for the payment of rent, or to such party or place as the Landlord may from time to time designate in writing." The trial court held that paragraphs eighteen and thirty of the lease required the defendant to give written notice to the landlord prior to the expiration date of the lease in order effectively to renew it, and that the written notice, if sent by mail, was required to be sent by registered mail. The trial court further found that the actions taken by the defendants did not satisfy the requirements of paragraph eighteen. We agree.

"It is always competent for parties to contract as to how notice shall be given . . . ." *Westmoreland* v. *General Accident Fire & Life Assurance Corporation, Ltd.,* 144 Conn. 265, 270, 129 A.2d 623 (1967). The parties agreed, in paragraph eighteen of the lease, that notices and demands incidental to the lease should be in writing, and, if mailed, such notices and demands should be sent by registered mail. The trial court did not err in concluding that the defendant's actions were ineffective in renewing the lease.

The defendant also assigns as error the trial court's finding that equitable considerations did not dictate a judgment in the defendant's favor. Equitable relief is extraordinary and not available as a matter of right,

but rather it is within the discretion of the court. See *Bendell* v. *Johnson,* 153 Conn. 48, 51, 212 A.2d 199 (1965). In reviewing claims that the trial court abused its discretion, great weight is due to the trial court and every reasonable presumption should be given in favor of its correctness. *Rokus* v. *Bridgeport,* 191 Conn. 62, 72, 463 A.2d 252 (1983). The ultimate issue is whether the court could reasonably conclude as it did. *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979).

The rule regarding equitable relief from the forfeiture of a lease is that "in cases of wilful or gross negligence in failing to fulfil a condition precedent of a lease, equity will never relieve. But in case of mere neglect in fulfilling a condition precedent of a lease, which does not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." *Fountain Co.* v. *Stein,* 97 Conn. 619, 626–27, 118 A. 47 (1922); see also *R & R of Connecticut, Inc.* v. *Stiegler,* 4 Conn. App. 240, 493 A.2d 293 (1985).

The trial court found that the defendant's action with respect to renewing the lease did not constitute "wilful or gross negligence." This factual finding will not be disturbed on appeal. See *Maresca* v. *Allen,* supra. The trial court further found that a denial of the tenant's right to renew the existing lease would result in a loss to the tenant of an extremely advantageous rent, far below the current fair market value, but that there was no evidence that it would cause him to pay more than the current fair rate for the same or similar premises. The court also found that there was not evidence of any shortage of other suitable commercial space readily available in the area into which the defendant could move. By contrast, the court found that the rent provided in the lease, about $5 per square foot,

no longer covered the plaintiff's expenses, and that the present fair market value was about $19 per square foot.

"Equity may intervene where the delay has been slight and the loss to the lessor small in order to avoid a substantial hardship upon the tenant." *Danpar Associates* v. *Falkha,* 37 Conn. Sup. 820, 823, 438 A.2d 1209 (1981). The trial court concluded that if equity were to overrule the forfeiture, the loss to the lessor would not be small, nor would the hardship on the tenant be unconscionable. See *Fountain Co.* v. *Stein,* supra. The defendant agues, on the basis of the law of other jurisdictions, that the court erred in considering the rental rate in determining the extent of the loss which would be suffered by the plaintiff. This court need not consider this claim by the defendant, because even if the trial court's consideration of the rental rate was error, it was harmless, since the trial court found that there was no evidence of "such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." *Fountain Co.* v. *Stein,* supra, 627. The trial court did not abuse its discretion in refusing to allow equity to overrule the forfeiture of the lease.

There is no error.

In this opinion the other judges concurred.