## REMO TARTAGLIA *v.* R.A.C. CORPORATION (6016)

DALY, O'CONNELL and FOTI, Js.

Argued April 14—decision released August 16, 1988

*Robert M. Davidson,* with whom was *James F. Wojeck,* for the appellant (plaintiff).

*Francis T. Mandanici,* for the appellee (defendant).

O'CONNELL, J. The plaintiff lessor appeals from a judgment rendered in favor of the defendant lessee in a summary process action, instituted after the defendant lessee failed to notify the plaintiff in a timely manner of its intention to renew its lease. All of the plaintiff's

claims of error[1] are subsumed in his general contention that, in granting the defendant equitable relief, the trial court did not follow the standard set forth in *R & R of Connecticut, Inc.* v. *Stiegler*, 4 Conn. App. 240, 493 A.2d 293 (1985).

Facts relevant to disposition of this appeal are as follows. In 1981, the plaintiff lessor's predecessor in title and the defendant lessee entered into a five year lease for the premises in question. A rider to the lease contained an option to renew[2] provided that notice of the lessee's intention to exercise this option was given to the lessor no later than six months prior to the expiration of the current term.[3] The rider expressly declared that time was of the essence in giving this notice. The termination date of the original five year lease was April 30, 1986, thereby establishing October 31, 1985,[4] as the last day on which the defendant could have given

---

[1] The plaintiff claims the trial court erred (1) in granting the defendant equitable relief, (2) in granting equitable relief without finding that all of the necessary criteria were met, (3) in finding that the plaintiff failed to sustain its burden of proof on the slightness of delay caused by the defendant's failure to notify the plaintiff, (4) in concluding that the defendant's failure to give notice resulted from mere neglect and not gross or wilful negligence, and (5) in concluding that the loss to the lessor was small and the loss to the lessee was great.

[2] The trial court correctly found that the rider was a convenant to renew the lease and not an agreement to extend it, and as such, an affirmative act by the defendant was necessary to exercise its right to renew. See *City Coal Co.* v. *Marcus*, 95 Conn. 454, 459–60, 111 A. 857 (1920) and *Nowesco, Inc.* v. *Community Petroleum Products, Inc.*, 38 Conn. Sup. 585, 587, 456 A.2d 340 (1982).

[3] The full text of the rider provides: "In order to exercise [the option to renew the lease] tenant must give written notice of its election to exercise same, *to be actually received by landlord no later than the sixth month prior to the expiration of the preceding term,* time being of the essence for the giving of such notice." (Emphasis added.)

[4] Through apparent typographical error, the trial court's memorandum erroneously referred to this date variously as October 31, 1986 and October 31, 1987.

the required notice. The defendant failed to give notice by the specified date, and did not inform the plaintiff of its intention to exercise the option until April 22, 1986, more than five and one-half months late. The defendant's notice was immediately rejected in writing by the plaintiff.

On or about July 1, 1986, the plaintiff brought this summary process action seeking possession of the premises. Despite the untimely notice of intent to renew, the trial court found for the defendant on its special defense that it would be inequitable to enforce the rider to the lease.

Because the six month renewal notice was not given by the required date, the defendant has no right to relief unless it can establish facts which warrant relief under equitable principles. *Fountain Co.* v. *Stein,* 97 Conn. 619, 623, 118 A. 47 (1922). "Equitable relief is extraordinary and not available as a matter of right, but rather it is within the discretion of the court." *Seven Fifty Main Street Associates* v. *Spector,* 5 Conn. App. 170, 173–74, 497 A.2d 96, cert. dismissed, 197 Conn. 815, 499 A.2d 804 (1985). This discretion, however, is not without limitation. See, e.g., *Montanaro Bros. Builders, Inc.* v. *Snow,* 4 Conn. App. 46, 54, 492 A.2d 223 (1985). In *R & R of Connecticut, Inc.* v. *Stiegler,* supra, the court set forth the burden of proof required of a commercial tenant seeking equitable relief from the consequences of a late lease renewal notice. The tripartite standard discussed in *R & R of Connecticut, Inc.,* supra, 245–46, requires that the tenant establish (1) that the delay was a result of mere neglect and not gross or wilful negligence, (2) that the delay was slight, and (3) that the lessor suffered only minimal harm while the harm to the lessee was substantial. All three elements of this standard must be met before equitable relief will be granted. *Seven Fifty Main Street Associates* v. *Spector,* supra, 174.

The trial court's finding of fact concerning the second element of the burden of proof is dispositive of this appeal.[5] In its memorandum of decision the trial court expressly found that "there is no question that the delay was not slight."

It is not disputed that this court is bound by the trial court's findings of fact. *Girgenti* v. *Cali-Con, Inc.*, 15 Conn. App. 130, 136, 544 A.2d 655 (1988). "This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found and whether the trial court could thereby conclude as it did." Id. Once it was determined that the defendant had failed in its burden on one of the three elements of the standard established in *R & R of Connecticut, Inc.*, the defendant was not entitled to relief in equity.

The defendant's reliance on *Aetna Casualty & Surety Co.* v. *Murphy,* 206 Conn. 409, 538 A.2d 219 (1988), is misplaced. The holding in *Aetna Casualty & Surety Co.* addressed an insurance policy which the Supreme Court deemed a contract of adhesion, containing terms beyond negotiation.[6] There is no evidence in the present case of either a disparity in the parties' bargaining power, or of an inequitable or unusual lease negotiation.[7] Therefore the express provisions of the lease control.

---

[5] Although a factor considered by the trial court was the terminal illness of the defendant-president's husband, and its effect upon the timeliness of the defendant's exercise of its option, we note that the trial court still found the degree of delay constituted a significant factor. Under *R & R of Connecticut, Inc.* v. *Stiegler,* 4 Conn. App. 240, 245–46, 493 A.2d 293 (1985), this factor, and not its underlying cause, determines whether equitable principles will fashion a remedy.

[6] "Life insurance contracts are contracts of adhesion because '[t]he contract is drawn up by the insurer and the insured, who merely adheres to it, has little choice as to its terms.' " *Aetna Casualty & Surety Co.* v. *Murphy,* 206 Conn. 409, 416, 538 A.2d 219 (1988).

[7] "Standardized contracts of insurance continue to be prime examples of contracts of adhesion, whose most salient feature is that they are not

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff.

In this opinion the other judges concurred.

subject to the normal bargaining processes of ordinary contracts." *Aetna Casualty & Surety Co.* v. *Murphy,* 206 Conn. 409, 416, 538 A.2d 219 (1988).