[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
Introduction
The present case is a summary process action in which the plaintiff seeks possession of a single family home which is utilized by the defendant as a law office. The premises were first leased by the defendant in February 1984, pursuant to an agreement with plaintiff's predecessor in title. The plaintiff purchased the building along with other property on May 20, 1988. A notice to quit for lapse of time was served on the defendant on April 18, 1990, and the present matter was commenced with a return date in June 1990. After a contested Motion to Dismiss which was denied by Gill, J. on August 13, 1990, and completion of discovery, the matter was tried on October 3 and 10, 1990.
 II
Discussion
A. CT Page 4351
The representative of the plaintiff, Thomas Vollmer, testified that at the time of purchase of the premises he was advised that there was no lease extant between the prior owners, the Guida Dairy family, or its various business entities and the defendant. Mr. Vollmer also introduced evidence that no lease or notice thereof was ever filed on the Bristol land records. (Exhibit B). An affidavit delivered to the plaintiff's immediate predecessor and signed by one Alexander Guida, President of the Elton Dairy Company, indicated that all of the existing tenants (of which there were nine in the several buildings sold by the Guida Dairy family) were month to month tenants. (Exhibit C). In fact, the document stated that "there are no existing leases either recorded or unrecorded." (Exhibit C — Schedule A).
 B.
Notwithstanding the above evidence and testimony concerning the lack of any written lease, the defendant produced a document entitled "Letter of Intent" which was signed by both the defendant and the plaintiff's predecessor on January 16, 1984 (Exhibit 3). It is the defendant's position that this document, albeit preliminary, satisfies all legal requirements to constitute a lease. As such, due to the length of tenancy set forth therein, the agreement if indeed a lease, would bar this action.
Before reviewing the document, this court notes that the testimony is quite clear that the plaintiff did not know of the existence of this document prior to the institution of this suit. However, the court is not convinced that the members of the defendant firm remembered that the document existed prior to the institution of the suit. During the trial, there was a fair amount of evidence as to discussions concerning the snowplowing of the premises and as to the tenant's vacating the premises. Missing from the testimony, especially from that offered by the defendant firm was a reference to this document, as a lease, controlling those specific issues. There was simply no mention whether orally, or by written form, in which the defendant advised the plaintiff that it would not vacate as the firm was in possession under a lease. This court would have expected the defendant, a law firm, to have directly referred the plaintiff to the document which the partners believed to be a lease. Notwithstanding this lack of testimony, it is necessary to review the document that was previously signed by the defendant and its former landlord.
 C.
A lease transfers an estate in real property to a tenant CT Page 4352 for a stated period, with a reversion in the owner after the expiration of the lease. Its distinguishing characteristic is the surrender of possession by the landlord to the tenant so that he may occupy the land or tenement leased to the exclusion of the landlord himself. Jo-Mark Sand Gravel Co. v. Pantanella, 139 Conn. 598, 601 (1953). The lease must contain, inter alia, sufficient information to be definite as to the premises to be let, the time when the term was to commence, the duration of the term and the rent to be paid. Maltby, Inc. v. Associated Realty Co., 114 Conn. 283, 288 (1932). In addition, the contract must also contain the names of the parties. United Coin Meter Co. v. Gibson, 311 N.W.2d 442, 444
(Mich.App. 1981); Brodsky v. Allen Hayosh Industries, Inc.,137 N.W.2d 771, 773 (Mich.App. 1965). Agreements concerning real property for a term of one year or more must be in writing and signed by the party or the agent of the party to be charged. General Statutes 52-550; Woodruff v. Butler, 75 Conn. 679, 681
(1903). Defendant's Exhibit 3, the "Letter of Intent" certainly describes the premises, the date of commencement, the duration and the amount of rent. The letter also goes further: it describes the purpose, payment of utilities and security deposit, renewal options, rental payments and finally renovations. The letter was also signed by one Bernie J. Guida, as owner, the defendant herein, and by one Sharon Powers, the rental agent. The court notes that it was Mr. Vollmer who testified that he had his discussions concerning the existence of leases with Bernie J. Guida.
This court is of the opinion that this document contains the requisite information to constitute a lease. As to whether the signature of Bernie J. Guida meets the Statute of Frauds requirement, the testimony produced at trial by Herbert Watstein, a signatory to the lease, leads the court to believe that Mr. Guida was signing on behalf of the Guida family and/or its corporations. First, there was no evidence to the contrary. Second, there was testimony as to the improvements performed by the Guida family pursuant to the agreement (Exhibit 5) and as to compliance with the other terms of the contract.
While the letter contained the necessary terms of a lease, the question is whether the letter was only evidence of a preliminary negotiation or whether it was truly a contract. Citizens Committee of the North End v. Hampton, 19 Conn. Sup. 375,377 (1955). The intention of the parties is instrumental in deciding this issue. Socony-Vacuum Oil Co., Inc. v. Elion,126 Conn. 310, 316 (1940). The law does not make a contract when the parties intend none nor does it regard an arrangement as completed which the parties thereto regard as incomplete. New Haven Tile Floor Covering Co. v. Roman, 137 Conn. 462, 464
(1951). See also, Steeltech Building Products, Inc. v. Edward CT Page 4353 Sutt Associates, Inc., 18 Conn. App. 469, 471-2 (1989). There is, however, no requirement for a formal writing. Burge v. Frey, 545 F. Sup. 1160, 1170 (1982). "The fact that the parties may have contemplated the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply that they had not already bound themselves to a definite and enforceable contract where terms could be changed only by mutual consent." H.B. Zachary Company v. O'Brien, 378 F.2d 423,426 (10th Cir. 1967). See also, Restatement, Second, Contracts 27.
This court finds that the Letter of Intent, when examined in light of the actions of the parties, including but not limited to the improvements made by both the Guida family and the defendant firm, pursuant to the agreement, the commencement of the tenancy, the length of the tenancy and the payment of rent according to the agreement, constitutes a contract or lease agreement which complies with the Statute of Frauds.
 D.
Having so found that the agreement is more than a preliminary discussion, the next issue to address is whether the lease is binding on the plaintiff. General Statutes 47-19
states, in part, that
 no lease of any building, land for any term exceeding one year or which provides for renewal thereof . . . shall be effectual against any persons other than the lessor and lessee and their respective heirs, successors, administrators and executors unless it is in writing . . . and recorded in the same manner as a deed of land . . . .
It is clear that the lease or an authorized notice thereof was not recorded on the Bristol land records. (Exhibits B, C). The purpose of the statute, of course, is to protect creditors and bona fide purchasers.
The effect of the statute is not to render an unrecorded lease void but merely voidable by such persons as are protected under the statute. Farmers v. Mech. Savings Bank v. First Fed. Savings Loan Assn., 167 Conn. 294, 301 (1974), citing Baldwin v. Walker, 21 Conn. 168, 182 (1851). In Drazen Properties Limited Properties Limited Partnership v. E. F. Mahon, Inc.,19 Conn. App. 471, 475 (1989), the Appellate Court held that the word "successor" as used in the statute refers to those who take CT Page 4354 property under the laws of succession and not to those who take by purchase or contract. It thus distinguished between the terms "successor" and "successor in interest" finding that to include those bona fide purchasers as successors would defeat the purpose of the statute. Id. As in Drazen, there was likewise no testimony in this case that the plaintiffs took title through inheritance or by will.
There is, however, a requirement that the purchaser must be a bona fide purchaser paying full value and without notice that some third party has a right to or interest in such property. Id., 477; Farmers Mech. Savings Bank., supra, 301-302. The purchaser has such notice if he knows facts which are sufficient to put a prudent man on inquiry and, which if prosecuted with reasonable diligence, would certainly lead to discovery of a conflicting claim. Andretta v. Fox New England Theatres, Inc.,113 Conn. 476, 482 (1931). There is no evidence that the plaintiff did not pay full value. Indeed, Exhibit C indicates title insurance to cover an amount of $650,000.00. Whether the plaintiff had notice is a different issue. As previously mentioned, the plaintiff had the property searched and received an affidavit as to the existing tenancies. (Exhibits B, C). The plaintiff clearly knew of the defendant's tenancy but was advised that it was month to month. (Exhibit C). The evidence indicates that the parties had almost no relationship from the time the plaintiff purchased the property. Mr. Vollmer was not even sure if he ever visited the premises as it was his intention to demolish them to construct something new. Herbert Watstein indicated that Mr. Vollmer did inspect the premises but asked no questions. The parties spoke on a few occasions, sometimes in a restaurant, but apparently never once was there any discussion of either party's expectations or rights. Mr. Julius Watstein testified about a discussion concerning snowplowing in 1988 or 1989 but the details of that discussion were sketchy at best. Mr. Vollmer had no memory of the alleged asked no questions. The parties spoke on a few occasions, sometimes in a restaurant, but apparently never once was there any discussion of either party's expectations or rights. Mr. Julius Watstein testified about a discussion concerning snowplowing in 1988 or 1989 but the details of that discussion were sketchy at best. Mr. Vollmer had no memory of the alleged conversation. Even if Mr. Watstein's testimony that Mr. Vollmer acknowledged the existence of a lease in response to a question on the plowing, the court notes that the tenant is responsible for snow removal under the document and thus Mr. Watstein's request to Mr. Vollmer would have been in error. Nevertheless, any agreement to plow by Mr. Vollmer did not necessarily mean that he acknowledged the existence of a written lease.
Should the plaintiff, knowing of the existence of the CT Page 4355 defendant's tenancy and believing it to be nothing more than a tenancy at will, be required to inquire of the defendant? Would a reasonable and prudent person (and here an attorney) confirm the representations made by its seller when this tenant seemed clearly entrenched in its location. Plaintiff could argue that when the parties met in the fall of 1989, at which time Mr. Vollmer announced the plaintiff's desire to regain the premises, no mention was made of the lease. That, however, is misleading because the real issue is not what the parties knew then but rather what the plaintiff knew or should have known earlier that year at the time of purchase. The preliminary certificate of title, of course, clearly warns the plaintiff that the premises are subject to "any rights of occupancy or rights of parties in possession." (Exhibit B).
In Drazen, supra, the Court found that the plaintiff knew of the existence of additional rental space not included in a produced lease. Similarly, in New York N.H. H.R. Co. v. Russell., 83 Conn. 583, 594 (1910), the court found that the purchaser who knew of the existence of power lines was precluded from denying their existence. The court discussed several cases noting that once "a prudent person was put on inquiry, if prosecuted with reasonable diligence, would certainly lead to a discovery of the conflicting claim. Then the inference that he acquired the information constituting actual notice is necessary and absolute." Id., 595. The court notes that had the plaintiff discussed the lease with the defendant prior to purchase and the defendant remained silent as to its existence, as it seemingly did in the late 1988 conversation, no notice would be found. Lengyel v. Peregrin, 104 Conn. 285 (1926). That is not the situation herein as Mr. Vollmer never discussed the leasing arrangement with the defendant firm members in May 1988. Thus, this court finds that the due diligence rule in which "men of ordinary prudence will use all reasonable means," Andretta v. Fox, supra, 480, was not followed in this case and thus, the statute may not be used to avoid the rights of the defendant.
 E.
The matter is, however, not yet resolved. The lease provided for an initial 2 year term followed by a 3 year and a 5 year term. The 3 year term would have started in February 1986, ending in February 1989. The 5 year term would have commenced in February 1989 ending in February 1994. The plaintiff was the owner of the premises in 1989. The testimony is clear that no notice concerning the renewal was sent by the defendant to the plaintiff at any time. Plaintiff argues that since no notice was sent, i.e., since the option to renew was not exercised, the lease became a month to month tenancy. General Statutes47a-3d. Defendant argues that despite the language of the lease CT Page 4356 ("option for renewal"), the real intent was for an extension rather than a renewal. No notice is required where the lease provides for an extension. Johnson v. Mary Oliver Candy Shops, Inc., 116 Conn. 86, 89 (1933). An option for renewal requires a new lease or some affirmative act creating the additional term. The question as to which exists is controlled by the lease. Id. An extension may be found even if it is called a renewal. Ackerman v. Loforese, 111 Conn. 700, 704
(1930). The present lease had no requirement to give notice. The lease does use the phrase "to be re-negotiated" after the phrase "2 year lease" but this court deems that phrase to apply only to the rental amount. It indicated that the amount would be determined each year of the original term and the options with a ceiling of 10%. As the requirement of notice is for the benefit of the lessor, Johnson v. Mary Oliver Candy Shops, Inc., supra, 90, it is significant that the lease does not require it. Our courts have held that an extension may be exercised by simply holding over, Nowesco, Inc. v. Community Petroleum Products, Inc., 38 Conn. Sup. 585, 587 (1982).
The issue of the determination of the rental amount with the 10% ceiling is not in this court's opinion significant enough to preclude a finding of an extension. Both the language of the lease and the previous practice of the prior landlord and present tenant suggest that a full re-negotiation was not the parties' intent. Mr. Herbert Watstein testified that he believed the tenancy to be ten years and that a shorter term would not have been acceptable. Thus, the first Letter of Intent was not signed. (Exhibit 2).
He also indicated that the rental amount had routinely been increased by 10% without any objection or discussion. Moreover, the intent of the parties for a 2 year initial term would be thwarted by a conclusion that suggested a true re-negotiation each year.
The determination of whether a clause in a lease is a covenant for renewal or an agreement for extension depends on the intention of the parties or by their practical construction. Blanck v. Kimland Realty Co., 122 Conn. 317, 318 (1937). The intention as can be seen through the previous practice of the Guida family and the defendant requires a finding that the provision was an extension and not a renewal option.
 III
Conclusion
This court's conclusion that the Letter of Intent constitutes a lease binding on the parties may certainly hinder CT Page 4357 some of plaintiff's expectations and perhaps cause some harm Yet, as noted by the court in Farmers Mech. Savings Bank v. First Fed. Savings Loan Assn., supra, 303 "such harm was foreseeable and could have been avoided by more diligent investigation. . . ." Even though the defendant firm was unconventionally silent about the lease, if the plaintiff had simply asked one question, this situation could have been avoided. Judgment to enter for the defendant.
BERGER, JUDGE.