[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Shunpike-West Limited Partnership has instituted a Summary Process cause of action dated July 25, 1995 against KMart Corporation.
The plaintiff alleges in part that the defendant has failed to comply with the terms of paragraph 18 of the lease dated October 16, 1972. Namely, it is claimed that the defendant permitted a truck rental business on the premises without the required municipal use permits. Because of the alleged breach of the lease, the plaintiff seeks a judgment of possession of the premises.
The plaintiff, on October 16, 1995 filed a Motion to Amend the prayer for relief so as to seek fees, costs and reasonable legal fees pursuant to paragraph 29 of the lease. Said motion was allowed.
The defendant has filed an answer dated August 4, 1995 and by motion dated November 14, 1995 requested leave to amend its answer so as to add a special defense, accordingly, the defendant has been allowed to assert the defense of equitable forfeiture.
 II
The lease in question which is dated October 16, 1972, concerns a building containing approx. 100,000 square feet which houses a KMart store in Cromwell, Ct.
Said lease is for a term of 25 years and contains a provision for ten 5 year renewal options that may be exercised by the lessee.
The provisions of said lease which are material to the instant lawsuit are paragraphs 18 and 25, which state as follows:
18. Tenant shall observe and comply with all rules, orders and regulations of the federal, state and municipal governments or other duly constituted public authority affecting said demised premises including the making of non-structural alterations, insofar as they are due to Tenant's occupancy; provided, however, in the event such rules, orders and regulations shall either (a) require structural changes, including but not limited to, the erection of a fire escape or exit, or (b) require nonstructural changes which would have been required irrespective of the nature of the tenancy, the, in either such event, the same shall be complied with by Tenant at its sole expense. CT Page 1169
25. If Tenant shall be in default under any other provision of this lease and shall remain so for a period of thirty (30) days after notice of Tenant of such default, then Landlord may, by, giving notice to Tenant at any time thereafter during the continuance of such default, either (a) terminate this lease, or (b) re-enter the demised premises by summary proceedings or otherwise, expel Tenant and remove all property therefrom, relet said premises at the best possible rent readily obtainable (making reasonable efforts therefor), and receive the rent therefrom; provided, however, Tenant shall remain liable for the equivalent of the amount of all rent reserved herein less the avails of reletting, if any, after deducting therefrom the reasonable cost of obtaining possession of said premises and of any repairs and alterations necessary to prepare it for reletting. Any and all monthly deficiencies so payable by Tenant shall be paid monthly on the date herein provided for the payment of rent. If any default by Tenant (except nonpayment of rent) cannot reasonably be remedied within thirty (30) days after notice of default, then Tenant shall have such additional time as shall be reasonably necessary to remedy such default before this lease can be terminated or other remedy enforced by Landlord. Except for the legal remedy of damages (provided Landlord shall, in all instances, be required to mitigate damages) and the equitable remedy of an injunction, the remedies of Landlord herein shall be exclusive of any other remedies.
The plaintiff claims that the defendant was advised on April 11, 1995, that certain municipal zoning regulations of the Town of Cromwell may not have been adhered to as to the subject property. Also that at a meeting of the general partners of the plaintiff and Robert Zimmerman, manager of KMart, that Zimmerman was informed of the alleged violations. Mr. Zimmerman testified that he does not remember that such information was so imparted to him. At any rate, any such information, if indeed presented, was informal and not based on any formal position of the Town of Cromwell at that time.
The first official notice, was a Notice of Non-Compliance (exh. D), sent to the plaintiff and dated April 18, 1995 from the Town of Cromwell. Said notice cited four activities concerning the property as follows:
 1) a truck rental with car trailers 2) a construction company CT Page 1170 3) storage of large box trucks 4) the storage of a 40' trailer
The plaintiff sent a transmittal to the defendant dated May 23, 1995 (exh. E), containing exh. D. Said correspondence was mailed to the defendant's corporate headquarters in Troy, Michigan.
It appears that said letter was received at corporate headquarters on May 30, 1995. It gave the defendant 30 days to cure the default. It appears that the plaintiff did not enclose an application for a use permit.
Between May 23, 1995 and July 12, 1995, the plaintiff claims that through its partner, Bradley Nitkin, it spoke with Mr. Zimmerman of KMart of the asserted default of the lease. On July 12, 1995, the plaintiff caused a Notice to Quit to be served on the defendant. Said notice alleged a violation of paragraph 18 of the lease and was served on the defendant on July 14, 1995.
The defendant sent a correspondence dated July 20, 1995, to the attention of Mr. Nitkin. Said correspondence was over the signature of Tracy M. Price and came from the defendant's corporate headquarters in Troy, Michigan (exhib. G).
The letter asserts the efforts of Mr. Zimmerman on behalf of KMart, particularly that Mr. Zimmerman forwarded a permit application to Penske and has been attempting to contact the Town of Cromwell relative to the use permit.
Mr. Price further states, in said letter, that paragraph 25 of the lease provides that, "if any default cannot reasonably be remedied within thirty (30) days after notice of default, than Tenant shall have such additional time as shall be reasonably necessary to remedy such default before this lease can be terminated".
Mr. Price also indicates that the use permit application has been forwarded to Penske and upon its completion, it will be submitted to the Town of Cromwell.
Plaintiff's exhibit H, is a Town of Cromwell Planning and Zoning Commission Use Permit Application. It is permit #75-51, dated July 11, 1995 and received July 18, 1995. The application indicates the owner is KMart and is signed by Steve Cline, who is Assistant Rental Manager for Penske. The application shows that it CT Page 1171 was denied by the Town of Cromwell on August 1, 1995. The applicants elected not to appeal said denial.
Plaintiff's exh. J is a Cease and Desist Order, issued by the Town of Cromwell and dated August 11, 1995. It indicated that a follow up inspection took place on August 10, 1995 and revealed that rental vehicles were still on the premises. Their removal was ordered. The Cease Desist order was issued only after the application was denied.
The defendant offered testimony that as of August 1, 1995 the rental operation was concluded and as of August 16, 1995 Penske had left the premises. However, it was indicated that there may have been one rental in August based on a contract entered into prior to August 1, 1995.
 III
A lease is a contract and should be interpreted as such.Solomon v. Hall-Brooke Foundation, Inc., 30 Conn. App. 136, 144,619 A.2d 866 (1993). In the construction of any lease, the following three principles must be kept in mind:
 (1) the intention of the parties is controlling be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; [and] (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible.
(Citation omitted.) Hatcho Corp. v. Della Pietra, 195 Conn. 18,20, 485 A.2d 1285 (1985).
Where the parties to a contract have reduced their agreement to a writing, their intentions are to be ascertained by a fair and reasonable construction of the written words, and the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. Konover Development Corp. v. Zeller, 228 Conn. 206, 233,635 A.2d 798 (1994). In other words, where the language of a lease is clear and unambiguous, the lease is to be given effect according to its terms. Id. CT Page 1172
A promise not expressly made will not be read into a contract unless it arises by necessary implication from the provisions of the instrument; Ives v. Willimantic, 121 Conn. 408, 411, 185 A. 427
(1936); because terms cannot be added to a contract by interpretation. Connecticut Union of Telephone Workers v. SouthernNew England Telephone Co., 148 Conn. 192, 200, 169 A.2d 646 (1961).
Moreover, "[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Citations omitted; internal quotation marks omitted.) Barnard v. Barnard, 214 Conn. 99, 110,570 A.2d 690 (1990). A word is ambiguous when it is capable of being interpreted by reasonably well informed persons in either of two or more senses. Federal Aviation Administration v.Administrator, 196 Conn. 546, 554, 494 A.2d 564 (1985). See alsoLopinto v. Haines, 185 Conn. 527, 538, 441 A.2d 151 (1981) ("ambiguous" has been defined as unclear or uncertain, or that which is susceptible of more than one interpretation, or understood in more ways than one).
Generally, the determination of "[t]he intention of the parties in executing a contract is a question of fact"; McClintockv. Rivard, 219 Conn. 417, 431, 593 A.2d 1375 (1991); that is "reversible only if the trier of fact could not reasonably have arrived at the conclusion that it had reached." Thompson Peck,Inc. v. Harbor Marine Contracting Corp. , 203 Conn. 123 at 130. Where, however, "there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citation omitted; internal quotation marks omitted.) Bank of Boston Connecticut v.Schlesinger, 220 Conn. 152, 158, 595 A.2d 872 (1991).
Finally, "[a] contract is to be construed as a whole and all relevant provisions will be considered together." (Citations omitted; internal quotation marks omitted.) Barnard v. Barnard,
supra, 214 Conn. 109. It is not within the power of the courts to create new and different agreements." Bank of Boston Connecticutv. Schlesinger, supra, 220 Conn. 159.
It appears that the intention of paragraph 18 of the lease is to have compliance with the municipal regulations.
IV CT Page 1173
The plaintiff argues that the defendant violated paragraphs 18 and 25 of the lease. Further, the plaintiff contends that the defendant did not act in a reasonably timely manner to cure the defect and that the defendant is not entitled to equitable relief.
The testimony and exhibits show that the first official notice concerning the need for a permit to allow the Penske rental operation came from Mr. Curtin on behalf of the Town of Cromwell in a letter dated April 28, 1995 to the plaintiff. The plaintiff responded to this transmittal on May 23, 1995 and on that date sent a correspondence to the defendant at its corporate headquarters.
On June 5, 1995 the defendant, from its corporate office wrote to Mr. Zimmerman in Cromwell concerning the issues raised. Mr. Zimmerman indicated that upon receipt of the letter, he informally contacted the Town of Cromwell and made arrangements for the use permit application to be sent to Penske, as Mr. Zimmerman felt that Penske had the requisite information to fill out the application.
Thereafter, Penske completed the application and submitted it to the Town of Cromwell (exh. H). The application was received on July 18, 1995. Said application was denied by the Town of Cromwell, on August 1, 1995.
The defendant points out that upon learning of the denial, Mr. Zimmerman, on behalf of the defendant proceeded to conclude the truck rental business with Penske. The cessation of the truck rental operation was evidenced by a document entitled "Immediate Notice of Termination of Agency Agreement by Penske" (exh. G).
The defendant points to paragraph 25 of the lease which provides the tenant with a reasonable time in which to cure a defect under the lease.
The court finds that the April 28, 1995 letter by the Town of Cromwell did implicate paragraph 18 of the lease. The issue then is whether or not the defendant acted within the purview of paragraph 25 of the lease. Said paragraph provides in part that, if any default by the tenant cannot reasonably be remedied within thirty days after notice of the default, then the Tenant shall have such additional time as shall be reasonably necessary to remedy such default before the lease can be terminated.
The defendant began to remedy the default within the 30 days, CT Page 1174 however the default was not cured within 30 days. The violation of paragraph 18 of the lease was cured by August 1, 1995. The court finds that the purpose of paragraph 18 of the lease has been accomplished.
The court concludes that based on the credible evidence, the cure of the default could not reasonably be accomplished within 30 days and the additional time taken by the defendant to cure was reasonable and within the ambit and intention of paragraph 25 of the lease.
Therefore the plaintiff is not entitled to terminate the lease and regain possession.
 V.
Although the above conclusion is determinative of the issues in favor of the defendant, because the doctrine of equitable forfeiture was raised, the court addresses that issue.
"The equitable defense of relief from forfeiture does not deny the allegations of a plaintiff's complaint . . . ." OaklandHeights Mobile Park, Inc. v. Simon, 36 Conn. App. 432, 436,651 A.2d 281 (1994). Rather, such a defense admits that a lease has been breached or terminated in some fashion, but asserts that equitable reasons exist that nevertheless establish that possession should not be taken away from the defendant. Id. Therefore, "the equitable defense of relief from forfeiture must be pleaded as a special defense"; id; and it will not be addressed on appeal unless it has been properly raised at the trial level. Fellows v. Martin,217 Conn. 57, 62-63, 584 A.2d 458 (1991).
"Willful or gross negligence in failing to fulfill a condition precedent of a lease bars the application of the doctrine of equitable nonforfeiture." (Citations omitted.) Cumberland Farms,Inc. v. Dairy Mart, Inc., 225 Conn. 771, 778, 627 A.2d 386 (1993).[1]
See also Seven Fifty Main Street Associates v. Spector, 5 Conn. App. 170,174, 497 A.2d 96 (1985) (the rule regarding equitable relief from the forfeiture of a lease is that, in cases of wilful or gross negligence in failing to fulfill a condition precedent of a lease, equity will never relieve). Thus, "[a] court of equity will apply the doctrine of clean hands to a tenant seeking such equitable relief" . . . and . . . "a tenant whose breach was willful or `grossly negligent' will not be entitled to relief." (Citations omitted.) Fellows v. Martin, supra, 217 Conn. 67.[2]
CT Page 1175
However, "[i]n case[s] of mere neglect in fulfilling a, condition precedent of a lease [which does not fall within accident or mistake], equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." (Citations omitted; internal quotation marks omitted.) CumberlandFarms, Inc. v. Dairy Mart, Inc., supra, 225 Conn. 779. See alsoMobilia, Inc. v. Santos, 4 Conn. App. 128, 131, 492 A.2d 544 (1985) ("[a] court may enjoin a forfeiture of a lease based on technical grounds to relieve a party against forfeitures and penalties not occasioned by his wilful neglect, upon the principle that one having a legal right shall not be permitted to avail himself of it for the purpose of injustice or oppression").
 It is elementary that a court of equity, even in the absence of fraud, accident or mistake may grant relief to prevent a forfeiture resulting from the breach of a covenant to pay rent upon payment or tender of all arrears of rent with interest.
(Citation omitted.) Zitomer v. Palmer, 38 Conn. Sup. 341, 345
(App. Sess. 1982), quoted in Mobilia, Inc. v. Santos, supra,4 Conn. App. 131.
Because "[t]here are no special elixirs which trigger the extraordinary remedies of equity," each party seeking equitable relief in a summary process action is required to prove the necessity for invoking the powers of equity. Zitomer v. Palmer, supra, 38 Conn. Sup. 346, quoted in Mobilia, Inc. v. Santos, supra,4 Conn. App. 131.
Equitable relief is extraordinary and not available as a matter of right; rather, it is within the discretion of the court.Seven Fifty Main Street Associates v. Spector, supra, 5 Conn. App.
The plaintiff argues that the defendant is not entitled to equitable relief, claiming "A court of equity will apply the doctrine of clean hands to a tenant seeking equitable relief, thus, the tenant whose breach was `wilful' or `grossly negligent' will not be entitled to relief."
The plaintiff contends that the defendant simply continued to allow the rental business for as long as it could before a cease CT Page 1176 and desist order was issued by the Town of Cromwell. However, the evidence indicates that the rental operation was, relatively speaking, not a highly profitable one for the defendant. Also by its earlier finding that the defendant acted within the purview of paragraph 25 of the lease, the court concludes that the defendant did not act in a wilful or grossly negligent manner, which would bar equitable relief.
The Fellows v. Martin, 217 Conn. 57, (1991) the Supreme Ct. state on pages 66 and 67:
 The factors considered by these courts in deciding whether to grant equitable relief in nonpayment cases are those suggested by Justice Story in his learned treatise, namely, (1) whether, in the absence of equitable relief, one party will suffer a loss "wholly disproportionate to the injury to the other party"; (emphasis added) 3 J. Story, supra, § 1728; and (2) whether the injury to the other party is reparable. See 3 J. Story, supra; see also Peterson v. Weinstock, 106 Conn. 436, 443-44, 138 A. 433 (1927). We applied a similar balancing test in two landlord-tenant cases, Fountain Co. v. Stein, 97 Conn. 619, 624, 118 A. 47 (1922).
In applying a balancing test, as indicated in the Fellowscase, supra, the court finds that any loss to the plaintiff has not been established and that the loss to the defendant would be substantial. First the defendant would lose a lease with its options. Secondly, if defendant were evicted from the premises, it could result in loss of jobs to the employees at the Cromwell store. Also the defendant would suffer the loss of a relatively profitable store. Whereas the loss, if any, suffered by the plaintiff is slight and reparable.
Therefore, applying the balancing test to the facts in the instant case, equity favors a non-forfeiture of the lease.
The court concludes that to deny KMart relief would result in such hardship to KMart to make it unconscionable to enforce literally the provision of the lease.
Because of the holding of the court, the plaintiff is not entitled to costs or legal fees. CT Page 1177
Judgment may enter for the defendant.
STENGEL, J.