FRANCESCO COSTANTINO *vs.* PASQUALE LODJIODICE.

. Third Judicial District, Bridgeport, October Term, 1918.
RORABACK, WHEELER, BEACH, GAGER and CURTIS, Js.

A written agreement which purported to make the plaintiff and defendant "co-partners in the milk business" for six years, provided that each should contribute twenty-five cows, all of which were to remain in the possession and under the exclusive care of the defendant, who was to feed and keep them at his own expense; he was also to pay the plaintiff $28 per week for 312 weeks, at the end of which each party was to have the right to dispose of the cows he had contributed. It was agreed that the cows furnished by the plaintiff should cost $65 each, and should be so marked as to be capable of being identified as his, and that if any of his cows should die or become incapacitated others were to be substituted at the equal expense of the parties. One after another twenty of the cows contributed by the plaintiff became useless for milking, and of these only two were replaced by him either in kind or in money. The plaintiff sued to recover the unpaid weekly sums of $28, and obtained a judgment for three twenty-fifths of the $28 per week, apparently upon the theory that the sum payable weekly was apportionable according to the number of plaintiff's cows that were actually on the farm, and from this judgment he appealed. *Held:*—

1. That under the pleadings and assignments of error it was not neces-

sary to determine whether the instrument was technically a partnership contract or not.

2. That the duty of giving notice of the incapacity of the plaintiff's cows, if any such duty existed, must be found in the contract, or must arise as a matter of common fairness and equity from the circumstances of the case.

3. That the terms of the contract did not impose any such duty upon the defendant, nor did the facts of record disclose any.

4. That inasmuch as the plaintiff based his right of action upon the contract, he could not recover without showing affirmatively that he had done his duty with respect to maintaining his full quota of cows; and that not only had he failed to do this, but it clearly appeared from the finding that he had in fact received such knowledge and notice as to put him on inquiry and to charge him with neglect for his failure to replace the disabled cows.

5. That the finding did not show any conduct upon the part of the defendant which would estop him from taking advantage of the plaintiff's failure to keep up his quota of cows.

6. That inasmuch as the plaintiff was not entitled to recover at all upon the contract, he certainly could not complain of the judgment in his favor apportioning the sum payable weekly.

The statute (§ 5830) relating to evidence touching exceptions to the finding, requires the trial judge to certify, in addition to the evidence claimed by the parties, "any other evidence deemed" by him "to be material." *Held* that unless it affirmatively appeared from the record that there was other evidence which the judge deemed material, it would be presumed that he had performed his duty and that there was no such evidence.

Argued October 22d, 1918—decided January 30th, 1919.

ACTION to recover damages for an alleged breach of a written contract, brought to and tried by the Superior Court in New Haven County, *Warner, J.;* facts found and judgment rendered for the plaintiff but for $296 only, from which he appealed. *No error.*

The plaintiff and defendant entered into a written contract, which was called a contract of partnership, for the conduct of the milk business for six years from September 26th, 1912. The business actually began some time before the six-year contract went into effect. Each party was to furnish twenty-five cows. The cows were to be in the possession and under the exclusive care of the defendant, and the keeping and feeding were

to be at his expense. The defendant was to pay the plaintiff $28 per week for three hundred and twelve weeks, at the end of which time each was entitled to take out the cows put in by him. The plaintiff took a mortgage from the defendant to secure the payments of $28 per week. The cows furnished by the plaintiff were to be marked for identification by him, were to be of the value of $65 each, and the medical expenses for the plaintiff's cows were to be borne equally. The contract contained this provision as to replacements:—

"9. It is further agreed that if any of the cows belonging to Francesco Costantino shall die or become so sick or incapacitated to produce milk, or become in such condition that it should be substituted, the said parties are to stand the expense of purchasing other cows in place of such deceased, sick, or other cows, equally, which new purchased cows shall belong to the said Francesco Costantino."

The plaintiff in May, 1916, sued to recover $28 per week from November 23d, 1915, being twenty-four payments. By amendment the claim was later extended to cover weekly payments to the time of trial in June, 1917.

The answer admitted the contract, but denied all other allegations of the complaint. The defendant also claimed reformation of the contract on equitable grounds, and damages for the loss of use because the plaintiff did not replace cows as agreed. The court denied the claim for equitable relief, and no appeal from this part of the decision was taken.

The court found that the plaintiff paid the defendant $1,625, with which the defendant furnished twenty-five cows to be put in by the plaintiff, that the defendant paid the plaintiff $28 per week in full to November 23d, 1915, though a few payments were made later, but no payments were made to apply upon any becoming due

after November 23d, 1915. One after another twenty of the plaintiff's cows became useless for the milk business between July 27th, 1913, and the time of trial. Two of them died, and the rest were sold by the defendant, without notice to the plaintiff, for $381.50, no part of which has been paid to the plaintiff. The plaintiff furnished money to replace two cows in the spring of 1913. None of the other incapacitated cows belonging to the plaintiff were ever replaced by him in kind or in money.

The defendant did not give the plaintiff notice of the incapacity of each cow as it occurred, except as to the two which were replaced, nor did the defendant during said time complain to the plaintiff specifically of the death of any of the cows or of their incapacity to produce milk. About June, 1913, the defendant told the plaintiff generally of the condition of the cows and the need of replacement. It was after this time that most of the cows became incapacitated. At that time—in June, 1913,—the plaintiff offered the defendant $500 to be relieved of the burden of replacement. This offer was not accepted or rejected. At no time did the defendant have in his possession enough money of the plaintiff to pay plaintiff's half of the cost of replacement. The plaintiff did not visit the farm where the cows were kept after October, 1912, though it was located within three miles of the plaintiff's residence. The defendant frequently visited the plaintiff at his store to collect money for the sale of milk, and the plaintiff and the defendant frequently met, and the plaintiff frequently passed the farm kept by the defendant, which was located upon the Milford turnpike, so-called. In November, 1915, there were only three cows left of the plaintiff's original quota, and these cows remained during the time for which the plaintiff demanded the weekly payment of $28.

The court found for the plaintiff to recover of the defendant three twenty-fifths of $28 per week, with interest, and rendered judgment for the plaintiff for $296.58 only, from which he appealed.

*Louis M. Rosenbluth,* with whom, on the brief, was *Charles J. Martin,* for the appellant (plaintiff).

*Wallace S. Moyle,* for the appellee (defendant).

GAGER, J. This action is brought to recover instalments of $28 per week, alleged to be due under the terms of a written contract, and no other relief is asked. The contract is styled a partnership contract, but we think it is rather a contract by which the plaintiff was to furnish certain cows for the use of the defendant in the milk business for six years at the specific rate of $28 per week. It is not, however, under the pleadings and reasons of appeal, necessary to determine whether the contract is technically a partnership contract or not.

The reasons of appeal relate to claimed errors in the finding, to the rule adopted as to notice, and to the measure of damages. The claimed errors in the finding relate to some twenty-eight paragraphs of the draft-finding and the finding. The evidence certified to this court does not show any sufficient reason for disturbing the finding as corrected by the trial court; and, further, the errors relate substantially to subordinate matters immaterial to the disposition of the case, in view of the terms of the contract as we interpret them.

The decisive reasons of appeal turn upon the proposition that the defendant was under a duty to notify the plaintiff as the plaintiff's cows successively became incapacitated, and that, failing to do so, he is precluded from availing himself of the defense that the plaintiff did not perform his obligation as to replacement of cows.

By the express terms of the contract, in the paragraph set out in the statement of facts, the duty of replacement is imposed as to the plaintiff's cows only. The expense of replacement is to be equally divided. The substituted cows are to be the plaintiff's. The contract is silent as to which of the parties shall purchase or take the initiative in purchasing, the contract providing only that the parties are to stand the expense equally; and further, the contract is entirely silent upon the question of notice of disability of cows. The contract is drawn, apparently, upon the theory of equality of information, as in a partnership. It appears, however, from the finding, that the cows had been furnished and the business was under way some time prior to the execution of the contract, that the plaintiff loaned the defendant money for the purchase of the farm on which the business was conducted, payable in weekly instalments, all of which were paid by September, 1915, thus giving occasion for weekly communication between the parties, that defendant visited the plaintiff frequently for business reasons, and that the plaintiff frequently passed the farm where the cows were kept, and that the farm was readily accessible from the plaintiff's residence in New Haven.

The duty of notice, if it exists, must be found in the contract, or must arise as a matter of common fairness and equity from the circumstances of the case. No such duty exists under the terms of the contract, nor do the facts disclose any such duty. Under the contract it was as much the duty of the plaintiff as of the defendant, to keep informed as to the condition of the cows. Where the plaintiff is basing his right of action upon performance, he must meet the burden of proof of showing that he used care and was diligent in inquiry and inspection and in the performance of the obligation to do his part toward replacement or substitution,

before he can successfully demand the payment of the $28 per week provided for in the contract. The action is specifically upon the contract, and the plaintiff cannot recover without showing affirmatively that he has done his duty with respect to the maintenance of the full quota of cows upon which his weekly income of $28 is based.

But the finding further shows that the plaintiff in fact had sufficient notice and knowledge to put him on inquiry and charge him with neglect if he failed to see to the replacement of disabled cows. The contract itself recognized the probable necessity of replacement. In two early cases he had specific notice to replace. About June, 1913, he had a general notice, and at that time, and in recognition of the serious burden of replacement, made an offer of $500 to buy off the obligation, thus recognizing most fully the burden and the duty.

The plaintiff claims that certain payments of $28 per week, made after November, 1915, and after the number of plaintiff's cows had been reduced to three, misled the plaintiff into supposing the number of cows was satisfactory. These, however, were delayed payments, and the trial court very properly held that whether these payments were made to cover arrearages or under a misconception by the defendant of his rights under the agreement, that should not preclude the defendant from asserting his rights based upon failure of the plaintiff to keep up his quota of cows. Moreover, the fact that by the contract the plaintiff was for six years to receive annually about ninety per cent of his investment, should have made the plaintiff alert to keep up his end of the agreement. But the finding shows that after he made his offer to buy off his obligation for replacements, in 1913, the plaintiff made no inquiries and lost all further interest in the

business except to collect his $28 per week. We think that the plaintiff did not perform his contract, and that no conduct of the defendant is shown that estops him from making a defense in an action to recover full weekly payment based on the plaintiff's keeping up his quota of cows.

If this is so, the court would have been justified in rendering a judgment in favor of the defendant. The court did not do this, but rendered a judgment for three twenty-fifths of $28 per week, apparently upon the theory that the weekly payment was apportionable in the ratio of the number of cows actually on the farm to the whole number required by the contract, and to that extent recognized the justice of the counterclaim based on the plaintiff's failure to replace. It is not necessary to determine whether the payment was properly apportionable in an action on a contract of this kind, or whether that apportionment fairly met the defendant's counterclaim, nor is it necessary to discuss the plaintiff's claims of error as to the measure of damages. The defendant is not claiming error. If, as we hold, the plaintiff did not establish performance and so was not entitled to recover at all in an action based on the contract alone, he cannot complain because the court, in a very manifest attempt to do substantial justice, disregarded the form of the action and did apportion the payments. As to the plaintiff, the judgment was too favorable.

One other reason of appeal should perhaps be noticed, which is that the court failed and neglected to certify the evidence upon which it based certain paragraphs of the finding. The record shows that all of the evidence requested by either party was duly certified and made part of the record. The statute, § 5830, imposes upon the trial judge the duty of certifying, in addition to the evidence claimed by the parties, "any other

evidence deemed by the judge to be material." In *Rowell* v. *Ross*, 89 Conn. 201, 93 Atl. 236, the judge certified the evidence claimed, and said that that was "not all the evidence upon the subjects . . . mentioned nor the most trustworthy part of such evidence," but did not certify such other evidence; and this was held to be error as not complying with the requirements of the statute. If no evidence other than that claimed by the parties is certified, and it does not affirmatively appear from the record that there was any other evidence which the judge deemed material, it will be presumed that the judge performed his duty and that there was no other evidence deemed by him material.

There is no duty of certification independently of the statute.

There is no error.

In this opinion the other judges concurred.