## PIC ASSOCIATES, LLC *v.* GREENWICH PLACE GL ACQUISITION, LLC
### (AC 31606)

Harper, Lavine and McDonald, Js.

Argued November 16, 2010—officially released April 19, 2011

*James A. Fulton,* for the appellant (plaintiff).

*Michael D. O'Connell,* with whom, on the brief, was *Erin Arcesi Mutty,* for the appellee (defendant).

*Opinion*

LAVINE, J. In this summary process action involving commercial real property, the plaintiff, PIC Associates, LLC, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendant, Greenwich Place GL Acquisition, LLC. On appeal, the plaintiff claims that the court mistakenly concluded that the defendant had proven its special defense of equitable nonforfeiture as to both counts of the plaintiff's complaint. We affirm the judgment of the trial court.

There is no dispute as to the following facts. The parties are the successors in interest to a fifty year

ground lease for real property that abuts West Putnam Avenue in Greenwich (town). Forty-eight units of a larger apartment complex known as Putnam Green are situated on the premises.[1] The original lessor was John & John, Inc., the plaintiff's predecessor in interest, and FAWN Associates was the original lessee. Antares Putnam Green IV, SPE, LLC (Antares), succeeded to the interests of FAWN Associates.

In 2007, Antares allowed numerous mechanic's liens to be placed on the premises and recorded in the town land records. On December 27, 2007, the plaintiff delivered notice to Antares that it was in default of the lease by reason of those mechanic's liens.[2] On January 11, 2008,[3] the defendant received an assignment of the lease from Antares and acquired ownership of the apartment complex on the premises. At the time of the assignment, Radco Management, LLC (Radco), assumed responsibility for the management of the premises and apartment complex on behalf of the defendant. With respect to the mechanic's liens, the defendant sent the plaintiff a surety bond in the amount of $2,108,733 on January 24, 2008.

Neither Antares nor the defendant paid the plaintiff the fixed monthly rent for January, 2008, within thirty

---

[1] The remainder of the apartment complex is owned by the defendant in fee title.

[2] Section 16 of the lease is entitled "Liens," and states in relevant part: "[The lessee] shall not create or permit to be created against the Demised Premises, the road or the [lessee] PARCEL any lien based on work or material ordered by or on behalf of [lessee]. If, and as often as, any such lien shall be filed, [lessee] shall take steps, by bonding or otherwise, to have such lien discharged of record, provided, however, [lessee] shall be privileged to contest such lien, by litigation or otherwise, to a judgment which shall be final beyond possibility of appeal, provided, further that [lessee] shall give [lessor] such reasonable assurance or security as may be appropriate to assure that [lessor's] interest in the leased premises, the road or the [lessee] parcel, shall not be jeopardized thereby."

[3] The assignment was to have taken place on December 27, 2007, but was continued to January 11, 2008, for reasons not relevant to this appeal.

days of its due date as required by the lease. On February 1, 2008, the plaintiff served the defendant with a notice to quit, which gave the following reasons: (1) "nonpayment of rent when due," and (2) "an expressed stipulation in your written lease gives the lessor the right to terminate your lease and re-enter the demised premises upon the lessee's failure to cure any default in the performance of any obligations or terms of the lease within thirty (30) days after notice thereof." Immediately upon receipt of the notice to quit, the defendant paid the plaintiff rent for both January and February, 2008.

The plaintiff commenced this summary process action on November 4, 2008. Count one alleged that the plaintiff was entitled to possession of the premises due to the defendant's failure to pay the January, 2008 rent when it was due, and count two alleged that the plaintiff was entitled to possession of the premises for the defendant's failure to discharge the mechanic's liens as required by the lease. In response, the defendant alleged several special defenses, but only the doctrine of equitable nonforfeiture is relevant to this appeal.[4]

The matter was tried to the court on May 21 and September 1, 2009. The court issued its findings and judgment orally on October 8, 2009. The court found that the defendant was negligent in failing to pay the January, 2008 rent pursuant to the lease but that the failure was not wilful or gross negligence. The court also found that the defendant negligently failed to post

---

[4] In *Fellows* v. *Martin*, 217 Conn. 57, 584 A.2d 458 (1991), a summary process action predicated on nonpayment of rent, our Supreme Court held "that equitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding." Id., 62. "The doctrine of equitable nonforfeiture is a defense implicating the right of possession that may be raised in a summary process proceeding, and is based on the principle that [e]quity abhors . . . a forfeiture." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 106 n.15, 900 A.2d 1242 (2006).

the proper bonds for the mechanic's liens but concluded that the plaintiff contributed to the mechanic's lien issue by not responding to the January 24, 2008 letter in which the defendant's counsel, Nellie P. Camerik, requested that the plaintiff's counsel communicate "any questions regarding this matter . . . ." The court concluded that the defendant had prevailed on its special defense of equitable nonforfeiture and rendered judgment in its favor. The plaintiff filed a motion for reargument and reconsideration. The court granted the motion for reargument, but following the reargument on October 20, 2009, denied the motion for reconsideration. The plaintiff appealed. Additional facts will be set forth as necessary.

"Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Internal quotation marks omitted.) *HUD/Willow Street Apartments* v. *Gonzalez*, 68 Conn. App. 638, 642–43, 792 A.2d 165 (2002).

"[E]quitable defenses . . . implicating the right to possession are available in a summary process proceeding." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, 225 Conn. 771, 777, 627 A.2d 386 (1993). "In reviewing claims of error in the trial court's exercise of discretion in matters of equity, we give great weight to the trial court's decision. . . . [E]very reasonable presumption should be given in favor of its correctness. . . . The ultimate issue is whether the court could reasonably conclude as it did."

(Citations omitted; internal quotation marks omitted.) *Elliott* v. *South Isle Food Corp.*, 6 Conn. App. 373, 377, 506 A.2d 147 (1986). "Our practice in this [s]tate has been to give a liberal interpretation to equitable rules in working out, as far as possible, a just result." *Petterson* v. *Weinstock*, 106 Conn. 436, 446, 138 A. 433 (1927). "Although we ordinarily are reluctant to interfere with a trial court's equitable discretion . . . we will reverse where we find that a trial court acting as a court of equity could not reasonably have concluded as it did . . . or to prevent abuse or injustice." (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 629–30, 987 A.2d 1009 (2010).

I

The plaintiff's first claim is that the court erred in concluding that the defendant had proven its special defense of equitable nonforfeiture for nonpayment of rent by finding that the defendant merely was negligent in failing to pay the January, 2008 rent on time. We disagree.

In response to the November, 2008 summary process action in which the plaintiff alleged that it was entitled to possession of the premises due to nonpayment of the January, 2008 rent,[5] the defendant denied that it had failed to pay the January, 2008 rent and alleged the doctrine of equitable nonforfeiture as a special defense,

---

[5] The following provisions of the lease are applicable to the plaintiff's claim. Section 6 of the lease is entitled "Fixed Rent." Section 6.01 states in relevant part: "The fixed rent for the basic term shall be . . . payable in monthly installments . . . on the first day of each month, in advance . . . ." Section 23 of the lease concerns default provisions. Section 23.01 states in relevant part: "Upon the failure of [lessee] (i) to pay the fixed rent within thirty (30) days of the due date . . . A. [Lessor] shall have the right, at its own option, to terminate this lease and may at any time thereafter re-enter the Demised Premises . . . and without any such re-entry may recover possession thereof in the manner required by the statute relating to summary process . . . ."

pleading, in part, that eviction would not be an appropriate remedy in view of the improvements the defendant and its predecessors in interest had made to the premises.[6] The plaintiff denied the defendant's special defense.

"[E]quitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding. If, then, the tenant's equitable claim was properly raised, it was properly before the trial court." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.,* supra, 225 Conn. 777. "Equitable principles barring forfeitures may apply to summary process actions for nonpayment of rent if: (1) the tenant's breach was not [wilful] or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable."[7] Id., 778.

---

[6] More specifically, the defendant's first special defense alleged in relevant part that "[t]he [p]laintiff's claims are denied, in whole or in part, by the doctrine of equitable nonforfeiture in that all defaults or alleged defaults under the [l]ease were resolved in a timely fashion such that eviction would be an inappropriate remedy. First, the [d]efendant's alleged failure to pay the January 2008 rent in a timely fashion was not willful or intentional in any manner, but rather was the result of a miscommunication between the [d]efendant and the prior [l]essee at the time of the assignment of the [l]ease to the [d]efendant. In fact, within days of learning that the January 2008 rent had not been paid, the [d]efendant remitted full payment to the [p]laintiff on February 4, 2008, thereby minimizing any prejudice or damage. Furthermore, since January 2008 the [d]efendant has paid, and the [p]laintiff has accepted, all monthly rental payments due under the [l]ease in a timely fashion. . . . In addition, if the [d]efendant is evicted from the [p]remises, it will suffer a loss that is wholly disproportionate to the injury that the [p]laintiff would suffer because the [d]efendant and its predecessors in interest have substantially improved the [p]remises by virtue of the construction of three buildings [comprising] approximately 48 apartment units with a value in excess of one million dollars, which improvements would be forfeited if the eviction is permitted. Finally, the [p]laintiff's injury is reparable in that the defaults can, and have been, remedied by virtue of the payment of the January 2008 rent . . . ."

[7] The plaintiff does not claim that the defendant's failure to pay rent was irreparable or that the defendant would not suffer a disproportionate loss if evicted.

The court found that the defendant's failure to pay timely the January, 2008 rent constituted negligence, rather than gross negligence. The plaintiff argues, on appeal, that the court's conclusion was incorrect because it was predicated on the court's finding that the defendant paid the plaintiff within a few days of receiving the notice to quit.[8] Although the court's oral decision is a bit ambiguous, our review of the decision reveals that the court made a specific finding that the defendant was negligent because it did not ask Antares whether the January, 2008 rent had been paid.

The court found in part: "The plaintiff, in its complaint, has alleged that it served the notice to quit because the [defendant] had not paid the rent, and that's true and there's no argument about it. The January rent was not paid timely. However, when the notice to quit was issued in early . . . February, not only was the January rent paid, but the February rent was paid. So, as I indicated earlier, and I think it's not coming by surprise, I think the [defendant was] negligent. I think that [it] should have, being a responsible large organization . . . with billions of dollars or millions of dollars, should have made a key question, did you pay the January rent? . . . I don't care how many papers you have on the table, that's so fundamental that it clearly was negligent. But on the other hand, I don't think it was wilful."

Our Supreme Court has defined gross negligence as "very great or excessive negligence, or as the want of,

___

[8] The plaintiff cited the following portion of the court's oral decision to support its claim. "But once having received the notice to quit and almost immediately paying the January and February rent, I find that that short period of time beyond the thirty day period was not wilful, was not gross negligence. And I think the first prong as to the rent has been satisfied by the defendant under their equitable defenses." This finding of the court is more relevant to the defendant's "good faith intent to comply with the lease." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, supra, 225 Conn. 778.

or failure to exercise, even slight or scant care or slight diligence . . . ." (Internal quotation marks omitted.) *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 338, 885 A.2d 734 (2005). It has defined wilful misconduct "as intentional conduct designed to injure for which there is no just cause or excuse. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, supra, 294 Conn. 630 n.10.

On the basis of our review of the record and considering the standard applicable to equitable nonforfeiture for nonpayment of rent; see *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, supra, 225 Conn. 778; we conclude that the record supports the court's finding that the defendant was negligent, not grossly negligent, in failing to pay the January, 2008 rent in a timely fashion due to its failure to ask Antares whether the January rent had been paid.[9] We also conclude that the court properly

---

[9] The plaintiff contends that there was insufficient evidence to support the court's finding that the defendant was negligent, not grossly negligent. We do not agree.

The transcript reveals the following examination of Norman J. Radow, who was employed by Radco, an asset management and distressed real estate company, by the defendant's counsel, Michael D. O'Connell.

"Q. And why did you not realize that the January rent had not been paid?

"A. It was a combination of errors. In December, the transaction with Antares was supposed to close at the end of December. Obviously, January's rent wasn't due yet. And in the representations and warranties of the seller of Antares, they said that other than the liens, there was no fact that would lead to a default of the PIC lease.

"Then the closing was adjourned for different reasons to January 11, and those reps and warranties were not changed. So, when we took over, when Radco took over, we assumed that the January rent was paid because the representation of the seller was that all rent and other obligations to PIC [were] met other than the open liens, which we addressed immediately."

The plaintiff argues that the defendant should have put the documents in evidence so that the court could decide what representations Antares had made. The representations Antares made were not relevant to the issue

found that the defendant had prevailed on its special defense of equitable nonforfeiture. The defendant paid the January and February, 2008 rent within days of receiving the February 1, 2008 notice to quit. "[T]he doctrine against forfeitures applies to a failure to pay rent in full when that failure is accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of a lease." (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, supra, 294 Conn. 630. "[T]he conduct of the [lessee] after he was informed of the nonpayment . . . is conclusive of the good faith of the [lessee] . . . and his continuous desire to avoid a forfeiture . . . ." *Thompson* v. *Coe*, 96 Conn. 644, 657, 115 A. 219 (1921). "[M]any courts have also taken into consideration the tenant's actions after receiving notice by the landlord of the termination of the lease, looking favorably on any actions by the tenant to cure the default or evidencing an intent to prevent the forfeiture . . . ." (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, supra, 634. We agree with the court that the defendant should have asked Antares specifically whether the January rent had been paid, but we cannot conclude that its failure to do so was more than negligence.

In his dissent in *Hanks* v. *Powder Ridge Restaurant Corp.*, supra, 276 Conn. 314, Justice Norcott stated that "[t]his court has construed gross negligence to mean no care at all, or the omission of such care which even the most inattentive and thoughtless seldom fail to make their concern, evincing a reckless temperament and lack of care, practically [wilful] in its nature." (Internal quotation marks omitted.) Id., 352. The record simply does not support a finding that the defendant's

of negligence. As the court stated in its decision, regardless of the content of the documents, at the closing in January, 2008, the defendant should have asked Antares directly whether the January, 2008 rent had been paid.

failure to pay timely the January, 2008 rent was gross negligence.

Moreover, the harm, if any, to the plaintiff was repaired and, as the court found, to evict the defendant after it had paid hundreds of thousands of dollars to acquire the apartment complex and large sums to improve the premises, would have been radically disproportionate to the loss suffered by the plaintiff due to the delay of a few days in the payment of one month's rent. For the foregoing reasons, we agree with the court's finding that the defendant proved its special defense of equitable nonforfeiture for nonpayment of rent.

II

The plaintiff's second claim is that the court improperly concluded that the defendant had proven the special defense of equitable nonforfeiture with regard to the mechanic's liens on the premises. Specifically, the plaintiff claims that the court erroneously concluded that (1) the defendant was negligent, not grossly negligent, by positing a surety bond and (2) any delay in bonding off the liens or providing the proper bond as security for the liens was due, in part, to the plaintiff's failure to respond to a letter from counsel for the defendant. We do not agree.

In count two of the complaint, the plaintiff alleged that it was entitled to possession of the premises because the defendant was in default of the lease for failing to discharge certain mechanic's liens. In response, the defendant denied that it had failed to discharge the subject liens. It also pleaded the special defense of equitable nonforfeiture, alleging that it had "secured a $2,108,733.00 surety bond on the [p]remises, which covers all of the mechanic's liens that were filed against the [p]remises, thereby assuring the [p]laintiff that it would not suffer any actual loss as a result of

the liens. In addition, if the [d]efendant is evicted from the [p]remises, it will suffer a loss that is wholly disproportionate to the injury that the [p]laintiff would suffer because the [d]efendant and its predecessors in interest have substantially improved the [p]remises by virtue of the construction of three buildings [comprising] approximately [forty-eight] apartment units with a value in excess of one million dollars, which improvements would be forfeited if the eviction is permitted." The defendant also alleged that the plaintiff's injury was reparable in that it was remedied by virtue of the surety bond.

Following trial, the court found that, on January 24, 2008, Camerik, an attorney with the Florida office of Weil, Gotshal & Manges LLP, sent a letter enclosing a surety bond to counsel for the plaintiff, James A. Fulton of Whitman Breed Abbott & Morgan LLC. In her letter, Camerik set forth the defendant's understanding of § 16 of the lease and stated that the defendant considered delivery of the surety bond satisfaction of its obligations with respect to the mechanic's liens. Camerik concluded her letter, stating, "If you have any questions regarding this matter, please do not hesitate to call me." The plaintiff's counsel did not respond to Camerik to inform her that the plaintiff did not consider the surety bond adequate protection against the mechanic's liens.

In adjudicating count two, the court stated, "I was almost persuaded by [the arguments of the plaintiff's counsel] that the failure to resolve the liens and to provide a bond to the [plaintiff] that they felt gave them the reasonable assurance was really close to gross negligence. The only reason I don't find it to be gross negligence is because, as [the defendant's counsel] has pointed out, there's a letter from . . . Camerik of January 24. That's clearly within the thirty day period, in which she says on page two, '[t]he [s]urety [b]ond has been sized to cover the aggregate amount of all [f]iled

[l]iens plus an additional 25 [percent] above that amount. If the [f]iled [l]iens have not been discharged as encumbrances on the [p]roperty prior to determination of the [s]urety [b]ond, we understand that further reasonable assurance will be required to be delivered in order to entitle [l]essee the privilege of contesting or continuing to contest any undischarged [f]iled [l]iens."[10]

The court found that there were sixty-seven mechanic's liens on the premises at the time of the closing and that within a matter of months, the defendant had secured the release of the vast majority of them, "leaving only three . . . ."[11] The court found that the defendant was negligent with respect to the type of bond it provided the plaintiff but that the defendant was not responsible for the delay in bonding off the liens. The court reached its conclusion that the defendant was merely negligent on the basis of Camerik's letter of January 24, 2008, which the plaintiff's counsel acknowledged receiving on January 24, 2008. The court found that, through Radco, the defendant "made immediate efforts to satisfy the bond requirement within the thirty day period and specifically said, any questions regarding this, do not hesitate to contact me." The court concluded that the plaintiff did not have the "right to sit back and not respond to that letter and to not say, hey,

---

[10] The court also read the remainder of Camerik's January 24, 2008 letter, which stated: "We believe that the delivery of the Surety Bond to Lessor satisfies all obligations of the Lessee under the Ground Lease under Section 16 thereof and the requirement to provide reasonable assurance or security to the Lessor as a precondition to Lessee's right to contest the Filed Liens and consequently effects a cure of all defaults described in the Default Notice.

"Per your instructions to me on the phone, we are delivering the enclosed Surety Bond to you as agent for the Lessor. Kindly acknowledge your receipt of the original Surety Bond on behalf of the Lessor by signing below where indicated and returning a copy of this letter to me via fax or email.

"*If you have any questions regarding this matter, please do not hesitate to call me.*" (Emphasis added.)

[11] There is no claim on appeal that the defendant has not paid the debt underlying any of the mechanic's liens.

this surety bond is inadequate or we want something more." The court found that in the notice to quit, the plaintiff pointed to express stipulations in the lease regarding defaults but failed to identify the default that had not been cured.[12] The court stated that summary process law is "very exact, very strict."[13] The court found that, under the circumstances, it was incumbent on the plaintiff to tell the defendant specifically what type of assurance it wanted.[14]

The court also stated that, even though the surety bond did not provide the plaintiff with the assurance it was seeking, it credited the defendant "with making reasonable efforts and assurances to the landlord by reason of the fact that [the defendant] got rid of the vast majority" of liens. See footnote 10 of this opinion. The defendant was attempting to satisfy the requirements under § 16 of the lease, which states in part that the lessee "shall be privileged to contest such lien, by

[12] The plaintiff's notice to quit gave the following reasons wherefore:

"1. nonpayment of rent when due;

"2. expressed stipulation in your written lease; an expressed stipulation in your lease gives the lessor the right to terminate your lease and re-enter the demised premises upon the lessee's failure to pay the fixed rent within thirty (30) days of the due date;

"3. expressed stipulation in your written lease; an expressed stipulation in your lease gives the lessor the right to terminate your lease and re-enter the demised premises upon the lessee's failure to cure any default in the performance of any obligations or terms of the lease within thirty (30) days after notice thereof."

[13] See *HUD/Willow Street Apartments* v. *Gonzalez,* supra, 68 Conn. App. 643–44.

[14] The court stated with respect to the law of summary process: "If the landlord or the tenant do not comply with the requirements of the summary process statutes, one of them is going to be out. And the landlord has an obligation to specifically spell out to the tenant. When you look at the letter that was sent by their counsel to [the plaintiff's attorney], if there's anything further you require, let us know. And then one week later, notice to quit is started without any further explanation. . . . [T]hat's playing very close to the vest. That, to me, is almost . . . ambush. That, to me, is an attempt to hold up this tenant. Further down the line, if these events had occurred, I could perhaps understand a quick notice to quit. But within the first month?"

litigation or otherwise, to a judgment which shall be final beyond possibility of appeal . . . ." Moreover, the court found that the plaintiff "had the right to expect reasonable assurance, but what was it that, in [its] efforts, that Radco didn't do? So, I do not find that the delay, and there was a delay, was caused simply by the actions of Radco, I think that that the landlord contributed to that delay, and I'm not going to find that [the defendant] did not satisfy the second prong."[15]

Last, the court found that, if the defendant were evicted, the plaintiff stood to profit disproportionately compared with the defendant's loss. The court found that, if the defendant was in good standing, the defendant would collect rent from forty-eight units, twelve times a year, for sixteen or seventeen years. Also, the defendant had paid hundreds of thousands of dollars to take over the outstanding lease, including the purchase price, the cost of improvements and the sixty-seven liens that were discharged. On the plaintiff's side, it incurred more than $9000 to defend a foreclosure action. Comparing losses, the court found that the loss to the defendant, if the plaintiff were to prevail, was monumental in comparison with that of the plaintiff.

At the October 20, 2009 reargument, the plaintiff's counsel argued that the lease did not require it to tell the defendant that it considered the surety bond inadequate to protect its interest in the premises. In support of its argument, the plaintiff relied on *Constantino* v. *Lodjiodice*, 93 Conn. 203, 208, 105 A. 465 (1919) ("duty of notice, if it exists, must be found in the contract"). The court distinguished *Constantino*, a contract action, from the one at hand, which involves an equitable special defense. Moreover, our review of *Constantino*

---

[15] We note that in its oral decision, the court also stated, "I don't think the tenant here delayed. I think [it] erroneously didn't provide the correct bond . . . ." The plaintiff failed to seek an articulation to resolve any ambiguity in the court's decision. See Practice Book § 66-5.

reveals the following complete statement of the rule. "The duty of notice, if it exists, must be found in the contract, or must arise as a *matter of common fairness and equity* from the circumstances of the case." (Emphasis added.) Id.

During the hearing, the court stated to the plaintiff's counsel: "[T]hey prepared a bond and it's not like they . . . did nothing to show good faith that they were procuring a bond, which they hoped was satisfactory to you. When the letter said if you have any questions, contact us, don't you think that you still had some duty to make some initial review of the bond and say, by the way counsel, this bond is totally N-G or it doesn't protect us. We suggest that you ought to read it more carefully or go back to your insurance company and get a bond that satisfies us." The plaintiff's counsel denied that the plaintiff or its counsel was required to do so. Nonetheless, the court concluded that the defendant made good faith efforts to satisfy the requirements of the lease.

As we stated previously, "[t]he balancing of equities is a matter which falls within the discretion of the trial court. . . . For that reason, equitable remedies are not bound by formula but are molded to the needs of justice. . . . Discretion means a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Citations omitted; internal quotation marks omitted.) *Montanaro Bros. Builders, Inc.* v. *Snow*, 4 Conn. App. 46, 54, 492 A.2d 223 (1985). "In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal

quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Angle,* 284 Conn. 322, 326, 933 A.2d 1143 (2007).

In adjudicating the second count of the complaint, which alleged that the plaintiff was entitled to possession of the premises due to the defendant's default on the mechanic's liens, the parties cited and the court relied on the tripartite standard quoted in *Modzelewski* v. *William Raveis Real Estate, Inc.,* 65 Conn. App. 708, 783 A.2d 1074, cert. denied, 258 Conn. 948, 788 A.2d 96 (2001). "The tripartite standard . . . requires that the tenant establish (1) that the delay was a result of mere neglect and not gross or wilful negligence, (2) that the delay was slight, and (3) that the lessor suffered only minimal harm while the harm to the lessee was substantial. All three elements of this standard must be met before equitable relief will be granted." (Internal quotation marks omitted.) Id., 715.

In resolving this appeal, we traced the origins of the tripartite standard. Our research discloses that it was adopted by our Supreme Court when it was resolving a summary process appeal in which the landlord alleged that the tenant had failed to give timely notice of intent to renew an existing lease. See *F. B. Fountain Co.* v. *Stein,* 97 Conn. 619, 118 A. 47 (1922). For the reasons explained herein, we conclude that the tripartite standard is inapplicable to the facts of this case. In doing so, we note the plaintiff's concession in its brief that Connecticut courts recognize that different standards apply to the doctrine of equitable nonforfeiture depending on the factual basis alleged in the summary process action. See, e.g., part I of this opinion discussing the doctrine of equitable nonforfeiture for nonpayment of rent.

## A

The plaintiff again claims that the court improperly determined that the defendant was negligent, rather than grossly negligent.[16] We do not agree.

In count two of its complaint, the plaintiff alleged, in part, that "[o]n December 27, 2007, [the] [p]laintiff caused a written notice to be duly served on [the] [l]essee specifying its failure to discharge certain mechanic's liens recorded against the [p]remises, as required under the terms of the [l]ease. . . . [The] [d]efendant has failed to comply with its obligations under the [l]ease by failing to discharge said mechanic's liens recorded against the [p]remises." In its answer, the defendant denied allegations or implications "that the [d]efendant failed to discharge certain mechanic's liens recorded against the [p]remises . . . ." In its special defense, the defendant alleged, in part, that "the [d]efendant secured a $2,108,733.00 surety bond on the [p]remises, which covers all of the mechanic's liens that were filed against the [p]remises, thereby assuring the [p]laintiff that it would not suffer any actual loss as a result of the liens. . . . Finally, the [p]laintiff's injury is reparable in that the defaults can, and have been, remedied by virtue of . . . the securing of the $2,108,733.00 surety bond."

The court found that the defendant was negligent in failing to bond off each of the mechanic's liens but that it had demonstrated a willingness, within thirty days of the notice of default, to remedy the mechanic's liens on the premises by providing the plaintiff with a surety bond. In its brief, the plaintiff cites *Elliott* v. *South Isle*

---

[16] The plaintiff claims that the defendant was grossly negligent with regard to the mechanic's liens by not retaining Connecticut counsel to advise it of (1) the requirements of the lease, (2) the rules of practice for substituting a bond for a mechanic's lien in the Superior Court, (3) redemption deadlines and other procedures following a judgment of foreclosure in this state and (4) the effect of an undischarged mechanic's lien on the marketability of title in Connecticut.

*Food Corp.*, supra, 6 Conn. App. 373, a summary process action concerning mechanic's liens,[17] in which the tenants permitted mechanic's liens to be placed on two pieces of property. The landlord sent notices of default and instituted summary process actions to evict the tenant. At the time of trial, the tenants had done nothing to remove the mechanic's liens from the subject property. Id., 378. The trial court found that the tenant's failure to remedy the mechanic's liens after it received a default notice indicated "either an inability or an unwillingness to do so." Id. On appeal, this court concluded that such a finding was "an example of at least borderline wilful or gross negligence in failing to fulfill [conditions] precedent of a lease, [where] equity will never intervene." (Internal quotation marks omitted.) Id., 378–79. *Elliott* is distinguishable from the facts here, under which the court found that the defendant had demonstrated a willingness, within thirty days of the notice of default, to remedy the mechanic's liens on the premises by providing the plaintiff with a surety bond. Unlike the tenant in *Elliott,* who did nothing to remedy the mechanic's liens, the defendant here resolved all but three of sixty-seven mechanic's liens in a matter of months. As we previously noted, gross negligence is "very great or excessive negligence, or as the want of, or failure to exercise, even slight or scant care or slight diligence . . . ." (Internal quotation marks omitted.) *Hanks* v. *Powder Ridge Restaurant Corp.*, supra, 276 Conn. 338. We cannot conclude that the defendant demonstrated merely scant care or slight diligence.

## B

The plaintiff also claims that the court improperly found that the delay in bonding off the mechanic's liens

---

[17] The plaintiff cites *Elliott* to support its claim that the delay in remedying the mechanic's liens was not slight. The trial court in *Elliott* found that the delay was not slight; *Elliott* v. *South Isle Food Corp.*, supra, 6 Conn. App. 378; but this court did not reach that issue after determining that the tenant was grossly negligent.

was not slight. A review of the court's oral decision reveals, however, that the court found no delay because the defendant posted the surety bond within thirty days of the plaintiff's notice of default. Nonetheless, it also found that there was a delay but that it was due, in part, to the plaintiff's failure to respond to Camerik's January 24, 2008 letter. See footnote 15 of this opinion. The court's finding and the plaintiff's claim, therefore, are incongruous because they concern different issues and different periods of time. Under the facts of this case, we cannot conclude that the slight delay language of the second prong of the tripartite standard controls.[18] See *Modzelewski* v. *William Raveis Real Estate, Inc.*, supra, 65 Conn. App. 715.

In *Modzelewski*, the defaulting tenant alleged equitable nonforfeiture in response to a summary process action for the tenant's failure to give timely notice to renew a lease. The tripartite standard was first stated in this jurisdiction in the case of *F. B. Fountain Co.* v. *Stein*, supra, 97 Conn. 619, in which the plaintiff tenant sought to secure the renewal of a written lease and an injunction against being ousted. The tenant, a successor in interest to a lease, failed to give thirty days written notice of its desire to extend the leasehold.[19] Id., 620. Our Supreme Court held that the "thirty-day clause was a condition precedent to the taking effect of the renewal term. No rights to a renewal could vest until [the] plaintiff had complied with the terms of this condition." Id., 623. "Since the thirty-day notice was not given at least thirty days before the expiration of the terms of the lease . . . the plaintiff has no right to relief unless it

---

[18] In its oral decision, the court did not use the language "slight delay" or undertake any analysis to determine whether the delay was slight or not.

[19] The relevant provision of the lease states that "if the lessee desires to extend this lease for any period after the first five years, then it shall give written notice of such desire to the lessor at least thirty days before the beginning of any such period." (Internal quotation marks omitted.) *F. B. Fountain Co.* v. *Stein*, supra, 97 Conn. 620.

can establish . . . such facts as will bring it within the power of equity to relieve." Id. After reviewing the state of equity on the issue; id., 624–26; the court concluded "the better rule to be that in cases of wilful or gross negligence in failing to fulfill a condition precedent of a lease, equity will never relieve. But in cases of mere neglect in fulfilling a condition precedent of a lease, which does not fall within accident or mistake, equity will relieve when *the delay has been slight,* the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." (Emphasis added.) Id., 626–27.

Over the decades, the tripartite standard has been applied in other cases involving a tenant's failure to give timely notice of its desire to renew a lease. See *Galvin* v. *Simons*, 128 Conn. 616, 25 A.2d 64 (1942) (mandatory injunction ordering defendant to renew lease and against prosecution of summary process); *Xanthakey* v. *Hayes*, 107 Conn. 459, 140 A. 808 (1928) (injunction ordering landlord to execute renewal and extension of lease); *Tartaglia* v. *R.A.C. Corp.*, 15 Conn. App. 492, 545 A.2d 573 (summary process action where tenant failed to give timely notice of intent to renew), cert. denied, 209 Conn. 810, 548 A.2d 443 (1988); *Seven Fifty Main Street Associates Ltd. Partnership* v. *Spector*, 5 Conn. App. 170, 497 A.2d 96 (same), cert. dismissed, 197 Conn. 815, 499 A.2d 804 (1985); *R & R of Connecticut, Inc.* v. *Stiegler*, 4 Conn. App. 240, 493 A.2d 293 (1985) (whether tenant's late notice of intention to renew lease of commercial property should be excused on equitable principles).

The analysis of the amount of delay in cases concerning notice of intent to renew a lease is of little help in this case, as it arises in a substantially different context. In the notice of intent to renew cases, there was a specific time in which notice had to be given, e.g., thirty

days prior notice or six months prior notice. A delay of five days where thirty days notice is required is qualitatively different from a five day delay where six months notice is required. The import of delay in such cases goes to the landlord's use of its property. That is not the situation in the case at hand. Here, the issue with respect to delay concerns a landlord's right to avoid foreclosure.

In this case, the court found that, within a matter of months, the defendant had remedied the majority of the mechanic's liens at a cost of hundreds of thousands of dollars. In its effort to demonstrate harm, the plaintiff has argued extensively that the defendant's failure to bond off the mechanic's liens immediately placed it at risk. The plaintiff introduced evidence that foreclosure actions were commenced on three of the mechanic's liens and that it incurred $9000 in attorney's fees.[20] The defendant settled all three actions and no foreclosure resulted. The defendant proved that its default was reparable.

The plaintiff's claim as to what the lease required of the defendant goes to the defendant's understanding of its obligations under the lease and whether it was at fault for failing to retain Connecticut legal counsel to inform it of its obligations. The plaintiff implies that if the defendant had retained Connecticut counsel, the defendant would have resolved the default in a different manner. That implication is speculation. The evidence reveals that, in response to the plaintiff's notice of default, the defendant retained counsel to resolve the default. Camerik corresponded with the plaintiff's counsel, explained her understanding of the lease and opined that the surety bond met the requirements of the lease.

---

[20] At oral argument in this court, the plaintiff represented that there is still one mechanic's lien on the Greenwich land records, but it did not represent that the underlying debt had not been paid. The defendant contends that the lien is no longer valid pursuant to General Statutes § 49-39.

"[A]n honest mistake, incorrect interpretation or mere difference in the parties' interpretations of a contract does not amount to bad faith conduct without an associated dishonest purpose." (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.,* supra, 294 Conn. 637. " '[A] court of equity may grant relief from a forfeiture when the defendant's omission was caused by an error of law' . . . ." Id., 634, quoting *Fellows* v. *Martin,* 217 Conn. 57, 68, 584 A.2d 458 (1991).

We have found precedent for a court's finding that the landlord contributed to a tenant's default on the lease, albeit in the context of nonpayment of rent. We conclude, however, that equity should consider such a finding in cases of other types of default as well. In *19 Perry Street, LLC* v. *Unionville Water Co.,* supra, 294 Conn. 611, our Supreme Court concluded that the trial court had improperly rendered a judgment of possession to the landlord where, among other things,[21] the loss to the tenant would be wholly disproportionate to the loss to the landlord; id., 634–36; the tenant made a good faith effort to comply with the lease; id., 636–38; the tenant was ready, willing and able to pay the rent due; id., 638; and the landlord's injury was reparable. Id. In *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.,* supra, 225 Conn. 771, our Supreme Court agreed with the trial court that the lessee's conduct was not wilful or grossly negligent and that it paid the rent and taxes due within thirty days of receiving the lessor's recalculations of those amounts, and thus the delay was slight.[22] Id., 778–79. The court also concluded that the impact

[21] In *19 Perry Street, LLC* v. *Unionville Water Co.,* supra, 294 Conn. 611, our Supreme Court also concluded that the landlord contributed significantly to the delay in payment of rent; id., 630–32; and that there was a good faith dispute over the meaning of the lease. Id., 636–38.

[22] In *Cumberland Farms, Inc.,* both the trial court and our Supreme Court concluded that the payment of rent was delayed significantly due to the conduct of the landlord-lessor. *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.,* supra, 225 Conn. 779.

of a forfeiture on the lessee would be wholly dispropor-
tionate to the injury suffered by the lessor; id., 779; and
that the loss was reparable. Id., 781–82. We therefore
conclude that because the court found that the plaintiff
was responsible, in part, for the delay in the defendant's
failure to bond off the mechanic's liens, it did not err
in concluding that the defendant had proven its special
defense of equitable nonforfeiture.

The judgment is affirmed.

In this opinion the other judges concurred.