ANTHONY J. PELLECCHIA, ADMINISTRATOR
(ESTATE OF ANTHONY E. PELLECCHIA) v.
CONNECTICUT LIGHT AND POWER
COMPANY ET AL.
(AC 33647)

Robinson, Espinosa and Sheldon, Js.

Argued September 14—officially released December 25, 2012

*Peter D. Clark*, for the appellant (defendant-third party plaintiff).

*Giovanna Tiberii Weller*, with whom were *Lauren J. Taylor* and, on the brief, *Richard L. Street*, for the appellees (named defendant-third party defendant et al.).

*Opinion*

SHELDON, J. In this appeal, the principal issue is whether one of two unrelated tortfeasors, whose separate and independent acts of negligence both allegedly caused the death by electrocution of a motorcyclist by exposing him, without warning, to the risk of electrocution arising from a downed electric power line on a public roadway, can lawfully seek indemnification from the other on the common-law theory of active-passive negligence, as recognized by our Supreme Court in *Kaplan* v. *Merberg Wrecking Corp.*, 152 Conn. 405, 207 A.2d 732 (1965). "The *Kaplan* case established a narrow exception to the general *common law* principle that there is no contribution among joint tortfeasors." (Emphasis in original.) *Hammond* v. *Waterbury*, 219 Conn. 569, 576, 594 A.2d 939 (1991). "*Kaplan* impose[d] an implied obligation of indemnity on a tortfeasor whose *active* negligence is primarily responsible for a plaintiff's injuries, thus superseding the indemnitee's *passive* negligence."[1] (Emphasis in original.) *Smith* v.

---

[1] We note that "superseding" in this context does not refer to a superseding cause as set forth in 2 Restatement (Second), Torts § 442 B (1965), the standard that our Supreme Court has adopted for an active tortfeasor does not relieve the passive tortfeasor of liability. See *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 607–608, 662 A.2d 753 (1995) ("[w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct" [internal quotation marks omitted]). Instead, we use "superseding" to describe the fact that active negligence displaces passive negligence, which results in the shifting of the impact of liability between joint tortfeasors.

*New Haven,* 258 Conn. 56, 66, 779 A.2d 104 (2001). "[I]ndemnity involves a claim for reimbursement in full from one on whom a *primary liability* is claimed to rest . . . . Indemnity *shifts the impact of liability* from passive joint tortfeasors to active ones." (Emphasis in original; internal quotation marks omitted.) *Bristol* v. *Dickau Bus Co.,* 63 Conn. App. 770, 773, 779 A.2d 152 (2001).

To establish that a third party is liable to indemnify it for damages awarded against it to the plaintiff for negligently causing harm to the plaintiff's decedent, a defendant seeking indemnification must plead and prove that "(1) the [third] party against whom the indemnification is sought was negligent; (2) [the third] party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting [harm]; (3) the [third] party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the [third] party's negligence, had no reason to anticipate it, and reasonably could rely on the [third] party not to be negligent." *Smith* v. *New Haven,* supra, 258 Conn. 66.

The case is now before this court on the appeal of the defendant-third party plaintiff, Quinebaug Valley Emergency Communications, Inc. (Quinebaug), from the judgment rendered by the trial court in favor of the third party defendants, Connecticut Light and Power Company, Northeast Utilities and Northeast Utilities Service Company (collectively, power company), after striking Quinebaug's third party complaint seeking indemnification on the theory of active-passive negligence. The court ruled, more particularly, that the allegations of the stricken complaint were insufficient as a matter of law to plead the third essential element of common-law indemnification, to wit: that the power company "was in control of the situation" that caused

the death of the plaintiff's decedent, for which damages are sought in the underlying action, "to the exclusion of [Quinebaug] the party seeking reimbursement" for any such damages that may ultimately be awarded against it in that action.

In the underlying action, the plaintiff, Anthony J. Pellecchia, administrator of the estate of Anthony E. Pellecchia, claimed that Quinebaug, a company hired to provide emergency communication services to the town of Killingly, negligently caused the death of his decedent by failing to notify the power company, the electric utility company that supplied energy to and serviced the downed electric power line that caused his decedent's death, of a tip it had received, several hours before the death, that the line was down. Quinebaug, in turn, alleged, in its third party complaint against the power company, that the power company failed to deenergize the downed line after it received, in that same time frame, a separate tip from a member of the public that the line was down. Quinebaug claimed that its own alleged negligence in failing to notify the power company of the tip it had received was passive, whereas the power company's failure to deenergize the line after receiving the other tip was active, in that the power company was the only entity responsible for and capable of deenergizing the downed line before the plaintiff's decedent or any other motorist struck and was injured by it. On that basis, Quinebaug claimed that the active negligence of the power company, in failing to do what it alone could do to eliminate danger to the general public from the downed line, was the direct and immediate cause of the plaintiff's decedent's death.

In support of its motion to strike, the power company argued that Quinebaug could not seek common-law indemnification from it under the allegations of the challenged third party complaint because those allegations described alleged acts of negligence by the power

company that were entirely separate from and independent of the alleged negligence of Quinebaug, as described in the plaintiff's underlying complaint. The power company contended that the independence of Quinebaug's alleged negligence from its own made it impossible for Quinebaug to prove two essential elements of common-law indemnification, to wit: that Quinebaug's negligence was passive instead of active and that the power company was in control of the situation that caused the injuries and death of the plaintiff's decedent to the exclusion of Quinebaug. On this score, the power company asserted that, if Quinebaug's independent negligence was a proximate cause of the injuries and death of the plaintiff's decedent, it must have been a form of active, rather than passive, negligence, for its causative effects would necessarily have remained in operation until the setting in motion of the final active injurious force that immediately produced or preceded such harm. In addition, it argued that Quinebaug's allegedly separate negligent contribution to the causation of the injuries and death of the plaintiff's decedent is irreconcilably inconsistent with the notion that the power company, by its own independent acts of negligence, was in control of the situation that caused the harm to the exclusion of Quinebaug.

Following the power company's reasoning, the court held that the issue of exclusive control of the situation must be resolved by comparing the allegations against the power company in the third party complaint to those against Quinebaug in the underlying complaint. On the basis of that comparison, the court concluded that the power company did not exercise the requisite degree of control over "the situation" to incur liability for common-law indemnification because "the situation" alleged in the underlying complaint, involving Quinebaug's alleged failure to notify the power company of the downed power line, "goes well beyond and

differs from allegations [of the third party complaint] concerning the downed power lines, and the means and methods of deenergizing them or otherwise rendering them safe." (Internal quotation marks omitted.) The court therefore struck the third party complaint for failure to state a claim upon which relief could be granted and later rendered judgment in favor of the power company when Quinebaug elected not to replead. This appeal followed.

On appeal, Quinebaug claims that the trial court improperly struck its challenged claim for failure to allege sufficient facts that satisfy the third essential element of common-law indemnification. The power company disagrees, arguing both that the trial court's ruling was legally correct as rendered and that, even if it was not, the judgment can nonetheless be affirmed on alternative grounds. For the following reasons, we conclude that the trial court's judgment must be reversed and that this case must be remanded for further proceedings on the defendant's claim for common-law indemnification.

"The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the [pleading] that has been stricken and we construe the [pleading] in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Lestorti* v. *DeLeo*, 298 Conn. 466, 472, 4 A.3d 269 (2010).

At issue in this appeal is whether the trial court properly determined, as a matter of law, that Quinebaug did not sufficiently allege the third essential element of common-law indemnification as established in *Kaplan*.

Our Supreme Court has defined "exclusive control of the situation," for the purpose of a common-law indemnification claim, as "exclusive control over the dangerous condition that gives rise to the accident." *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 706, 694 A.2d 788 (1997). Generally, the question of control should not be resolved on a motion to strike because it is a question of fact. Id., 704. In a given case, however, "special circumstances may give rise to the question of whether, in light of the facts alleged in the third party complaint, any reasonable juror could find that the third party defendants had exclusive control of the situation." Id., 705.

The focus of this appeal is on the meaning of the term "the situation" as used in *Kaplan* and later cases to define the third essential element of active-passive negligence. In characterizing "the situation" as Quinebaug's allegedly negligent conduct, as described by the plaintiff in his underlying complaint, the trial court confused such allegedly negligent conduct with the dangerous condition that allegedly exposed the plaintiff's decedent to harm by virtue of such conduct—here, of course, the downed electric power line in the public roadway. Although the plaintiff's allegations of negligence against Quinebaug surely constitute the factual theory upon which he seeks to prove that Quinebaug negligently caused his decedent's injuries and death, the dangerous condition, or "situation," that allegedly caused such harm by virtue of the defendant's negligence was plainly the downed power line, not the negligent conduct itself. The downed line, simply stated, was the condition of danger from which a foreseeable risk of harm to the plaintiff's decedent is claimed to have arisen due to the negligence of both Quinebaug and the power company. It, then, was "the situation" over which the power company must be shown to have had exclusive control before its liability to indemnify Quinebaug can be established.

Here, there is no question that both the alleged conduct of Quinebaug in failing to notify the power company of the downed power line in the roadway and the alleged conduct of the power company in failing to remove and/or to deenergize the downed power line after receiving separate notice of its presence in that location are claimed to have proximately caused the plaintiff's decedent's injuries and death by exposing him, without notice, to the downed line. Quinebaug clearly has alleged that, at the time of the plaintiff's decedent's injuries and death, the power company had control over the downed power line to the exclusion of Quinebaug because only the power company was responsible for and capable of deenergizing the line, and thus eliminating the danger of electrocution therefrom. Because such allegations are all pleaded in the challenged complaint, the complaint sufficiently pleads the third essential element of common-law indemnification.

As an alternative basis for affirming the trial court's granting of its motion to strike, the power company argues that the challenged third party complaint also fails to allege sufficient facts to establish the second essential element of common-law indemnification, to wit: that the negligence of Quinebaug, as the party seeking indemnification, was passive. On this score, it argues, as it did before the trial court, that because Quinebaug's alleged negligence, as described in the plaintiff's underlying complaint, was completely separate from and independent of its own alleged negligence, as pleaded in the challenged third party complaint, such negligence must be found to have been active rather than passive if it is ultimately found to have proximately caused the injuries and death of the plaintiff's decedent. Quinebaug rejects this claim on the basis of settled Supreme Court precedents, including *Kaplan*, which expressly hold that "[a]n indemnitee

may be chargeable with personal negligence, independent of any negligence of the indemnitor, and still not be chargeable with active or primary negligence. Personal independent negligence may be passive or secondary negligence. It need not necessarily be active or primary negligence." *Kaplan* v. *Merberg Wrecking Corp.*, supra, 152 Conn. 415. It thus is possible to have common-law indemnification between unrelated parties whose separate and independent streams of negligence, one active and the other passive, give rise to a foreseeable risk of harm from the same condition of danger. Accord *Skuzinski* v. *Bouchard Fuels, Inc.*, supra, 240 Conn. 702 (concluding that, "outside the context of workers' compensation law, [a defendant seeking indemnification under the common-law theory of active-passive negligence] need not establish the existence of an independent legal relationship between itself and the alleged indemnitor as a condition for recovery"). In conclusion, *Kaplan* and its progeny stand for the proposition that, where two parties with independent duties to exercise reasonable care for the safety of another person separately breach those duties in ways that cause harm to the other person by exposing him to one and the same dangerous condition, equity permits the shifting of all responsibility for the injured person's resulting damages to the party who, by virtue of its control of the dangerous condition to the exclusion of the other negligent party, was the direct and immediate cause of the accident.

According to the third party complaint in the present case, Quinebaug's failure to act indirectly gave rise to a risk of harm from the dangerous condition, the downed power line, by failing to notify the power company of its need to act to deenergize the line, whereas the power company's failure to deenergize the line in response to information received from another source was the direct and immediate cause of the harm. Quinebaug's function of informing the power company of the

downed power line on the public roadway allegedly constituted a preliminary step that would have preceded the power company's ultimate act of deenergizing the downed power line and eliminating the risk of harm arising from it. Even if Quinebaug had relayed notice of the dangerous condition to the power company, the risk of harm from that dangerous condition would not have been eliminated unless or until the power company acted to eliminate it. Those allegations are sufficient to establish the second essential element of common-law indemnification. Accordingly, on this basis as well, Quinebaug's claim should have survived the power company's motion to strike.[2]

The judgment is reversed and the case is remanded with direction to deny the motion to strike Quinebaug's indemnification claim and for further proceedings according to law.

In this opinion the other judges concurred.

---

[2] As a second alternate basis for affirming the trial court's decision, the power company argues that Quinebaug cannot satisfy the third element of common-law indemnification because Quinebaug cannot demonstrate that the power company exercised exclusive control over the dangerous condition that caused the harm for which the plaintiff seeks to recover damages from it to the exclusion of the defendant town of Killingly. In asserting this final claim, the power company misinterprets the third prong of *Kaplan.* To recover under the active-passive negligence doctrine, Quinebaug is required only to plead and to prove that the power company "was in control of the situation to the exclusion of the [party seeking indemnification]"; *Kaplan* v. *Merberg Wrecking Corp.*, supra, 152 Conn. 416; not all other conceivable tortfeasors.