******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DONNA VALENTE *v.* SECURITAS SECURITY
SERVICES, USA, INC., ET AL.
(AC 35318)

DiPentima, C. J., and Lavine and Flynn, Js.

*Argued February 10—officially released August 12, 2014*

(Appeal from Superior Court, judicial district of

Stamford-Norwalk, Hon. Alfred J. Jennings, Jr., judge trial referee.)

*Daniel J. Krisch*, with whom was *Brian D. Rich*, for the appellant (named defendant, third party plaintiff).

*Kim E. Rinehart*, with whom were *Tadhg A. J. Dooley* and, on the brief, *Thomas F. Clauss*, *Jr.*, for the appellees (third party defendant Affinion Group, LLC, et al.).

*Opinion*

FLYNN, J. The defendant and third party plaintiff, Securitas Security Services, USA, Inc. (Securitas), appeals from the entry of summary judgment in favor of the third party defendants, Affinion Group, LLC, and Trilegiant Corporation (Affinion).[1] In this appeal, Securitas claims that the trial court erred by improperly rendering summary judgment on its claims for (1) common-law indemnification and (2) contractual indemnification by Affinion. We affirm the judgment of the trial court.

The case before us began when the plaintiff, Donna Valente, a senior manager of Affinion, found a note in her office signed by someone who identified himself only as her "secret admirer." After an investigation conducted by Affinion, the writer was later identified as Joseph Veneri; he was employed as an overnight security guard by Securitas, a security services provider that had contracted with Affinion to provide security in the office where Valente was employed. Veneri's note contained, inter alia, a request for a pair of her underpants and verbal descriptions of her, all of which Valente found offensive. Veneri followed the first note with a second such request, which Valente also found offensive. The plaintiff commenced a legal action against Securitas and Veneri in which she sought money damages. Valente did not sue her employer, Affinion. Securitas filed a third party complaint in which it sought both apportionment and common-law and contractual indemnification from Affinion. Securitas later settled the claim Valente had brought against it but continued to pursue its third party claims against Affinion, Valente's employer, seeking apportionment, common-law indemnification, and contractual indemnification.

The following additional facts are undisputed. In November, 2007, the anonymous note of a sexual nature was left on Valente's desk. Valente reported this November incident to her supervisor, who, in turn, contacted Mary Rusterholz, Affinion's executive vice president of support services. Rusterholz notified the manager of Affinion's Norwalk facility, Brian Howarth, and instructed him to be especially vigilant of the area around Valente's office. Howarth, in turn, ordered that surveillance be increased around Valente's office and instructed the on-site supervisor for Securitas, Leroy Campbell, to report back to him about any unusual activity in the area. Campbell worked the day shift during that time; he informed all of the overnight security guards of Hogarth's request. In December, 2007, a second similarly offensive note was left on Valente's desk, again seeking a pair of her underpants and apologizing to her if the first note had given her offense. An investigation led by Michael Brown, Affinion's human resources manager, was commenced to determine who was leaving these notes for Valente. Brown met with

Valente and took steps to protect her, including giving her a parking spot close to the building, providing her ingress and egress access through a side door, offering her an escort to her car, and instructing her to vary her routine. With Valente's permission, Affinion installed a hidden camera in her office in late December, 2007, to ascertain who was leaving the notes.

The motion activated security camera began recording on December 28, 2007. It revealed that Veneri entered Valente's office on multiple occasions. In the first instance, recorded December 31, 2007, Veneri is observed sitting in a chair near the door of Valente's office. A recording from January 3, 2008, showed Veneri entering Valente's office and rummaging through her desk drawer. Brown informed Rusterholz and Hogarth of the tapes' contents; Securitas, however, was not informed at this time.

On January 6, 2008, the recording showed Veneri enter Valente's office and masturbate into a cup on her desk. Upon reviewing the tape the following morning, Brown immediately went to Valente's office and removed the cup before she arrived at work. Brown then contacted Securitas, informed it of the contents of the video recording, and instructed that Veneri should not return to the Affinion facility or have any contact with its employees. Subsequently, Brown informed Valente that he believed that he had identified the person who had left her the notes and that the individual would no longer be permitted on the Affinion premises.

Valente sued Veneri and Securitas for invasion of privacy, negligence, and negligent infliction of emotional distress; she also sued Securitas for negligent supervision and Veneri for intentional infliction of emotional distress and battery. Thereafter, Securitas filed a three count apportionment and third party complaint in which it sought apportionment and common-law and contractual indemnification from Affinion.[2] In its claim for common-law indemnification, Securitas alleged that Affinion's negligence was the "direct and immediate cause of [Valente's] losses," that "Affinion has control over the situation that caused [Valente's] alleged losses, to the exclusion of Securitas," and that "Securitas had no reason to know of or anticipate that Affinion would be negligent, and reasonably relied upon Affinion not to be negligent." In its claim for contractual indemnification, Securitas alleged that it was entitled to indemnification by Affinion, pursuant to the indemnification clause contained in the guard services master agreement entered into by Affinion and Securitas' corporate predecessor. The relevant provision in that agreement provides: "[Affinion] shall indemnify, defend, and hold harmless [Securitas] from and against any and all losses, claims, damages, expenses, fees, settlements, penalties and attorneys' fees arising out of

or resulting from any third party's claim relating to the gross negligence or willful misconduct by [Affinion]."

Securitas moved for summary judgment against Valente and Affinion. Both motions were denied. Thereafter, Affinion moved for summary judgment against Securitas. The court granted Affinion's motion for summary judgment.[3] As to Securitas' claim for common-law indemnification, the court granted summary judgment in favor of Affinion. The court held that "the dangerous condition that gave rise to the plaintiff's alleged injuries is Veneri himself, not Affinion's alleged [delay] in disclosing or reporting the monitoring of Veneri on a hidden camera. Thus . . . there are no issues of material fact relating to the presence or absence of exclusive control." Affinion was therefore entitled to judgment as a matter of law. As to the contractual indemnification claim, the court first held that Securitas' claim was barred because it did not "allege any claim of gross negligence or wilful misconduct against either party to the contract," as required by the contract provision relied on by Securitas. The court further concluded that "there is no evidence whatsoever that Affinion had a duty to report the fact of its investigation, or the findings, to the employer potentially liable for the actions of one of the people who had after-hours access to the plaintiff's locked office." This appeal followed.

We begin by setting forth the applicable standard of review and legal authorities relevant to Securitas' appeal of the trial court's grant of summary judgment. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 312–13, 77 A.3d 726 (2013).

On a motion for summary judgment, the moving party "must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . A material fact is a fact that will make a difference in the result of the case. . . . [T]he burden of showing the nonexistence of any material fact is on the party seeking summary judgment . . . . It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence

outside the pleadings to show the absence of any material dispute. . . . The party opposing summary judgment must present a factual predicate for his [or her] argument to raise a genuine issue of fact. . . . Once raised, if it is not conclusively refuted by the moving party, a genuine issue of fact exists, and summary judgment is inappropriate.

"The court is required to view the facts presented in a motion for summary judgment in the light most favorable to the party opposing the motion. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 193, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008).

Indemnification involves a claim for reimbursement in full from one on whom a primary responsibility is claimed to rest, while apportionment, sometimes called contribution, involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably ought to be paid in part by others. See *Kaplan* v. *Merberg Wrecking Corp.*, 152 Conn. 405, 412, 207 A.2d 732 (1965). "In an action for indemnity . . . one tortfeasor seeks to impose total liability upon another." *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 697 n.3, 694 A.2d 788 (1997).

I

Securitas first claims that the trial court improperly rendered summary judgment on its claim for common-law indemnification. We begin by reviewing our law concerning common-law indemnification. Generally, there is no right to indemnification between joint tortfeasors. *Kaplan* v. *Merberg Wrecking Corp.*, supra, 152 Conn. 412. Our Supreme Court in *Kaplan* recognized an exception to this general rule. Id. *Kaplan* teaches that indemnification is available from a third party on whom a primary exposure of liability is claimed to rest. Id. To hold a third party liable to indemnify one tortfeasor for damages awarded against it to the plaintiff for negligently causing harm to the plaintiff, a defendant seeking indemnification must establish that: (1) the third party against whom indemnification is sought was negligent;[4] (2) the third party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting harm; (3) the third party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the third party's negligence, had no reason to anticipate it, and reasonably could rely on the third party not to be negligent. See id., 416. "Our Supreme Court has

defined exclusive control of the situation, for the purpose of a common-law indemnification claim, as exclusive control over the dangerous condition that gives rise to the accident." (Internal quotation marks omitted.) *Pellecchia* v. *Connecticut Light & Power Co.*, 139 Conn. App. 767, 775, 57 A.3d 803 (2012) (dangerous condition held to be electric power line which electrocuted plaintiff), cert. denied, 308 Conn. 911, 61 A.3d 532 (2013).

Securitas claims that summary judgment was improper on its claim for common-law indemnification because there is a genuine issue of material fact over what was the dangerous condition giving rise to Valente's injuries and whether Affinion had exclusive control over that dangerous condition. In a two step analysis, we first analyze whether the trial court correctly determined that Veneri was the dangerous condition. Second, we must analyze whether a reasonable juror could have found that Affinion exercised exclusive control over that dangerous condition. We conclude that the trial court properly held that Veneri and his conduct in Valente's office was the dangerous condition that caused Valente's legal injury and damages, and that no reasonable juror could find that Affinion had exclusive control over Veneri, a Securitas employee.

A

We first consider whether Securitas has met the third *Kaplan* requirement of showing that there is a genuine issue of material fact that "primary liability" rests on Affinion for the dangerous condition. See *Kaplan* v. *Merberg Wrecking Corp.*, supra, 152 Conn. 412. We conclude that it has not done so. The first note left in Valente's office in November, 2007, requested a pair of her underpants, remarked on parts of her body and was otherwise offensive. At the time Veneri left this first offensive note, it was undisputed that he was a Securitas employee and that Affinion had not commenced its investigation. Put another way, there was no investigation by Affinion when the first note was sent to and received by Valente. There would be no purpose in Affinion conducting an investigation of sexual harassment of one of its employees that had not yet occurred. Veneri was a "dangerous condition" when he harassed Affinion's employee. He remained a dangerous condition after Affinion received its employee's complaints and subsequently took steps to protect her and investigate who was harassing her.

During the oral argument of this case before this court, it was pointed out to Securitas' counsel that the November, 2007 conduct "had already occurred" prior to any investigation by Affinion. Counsel's response was that as to the conduct that had already occurred, "that goes to how much of her harm was caused by which particular portions of the conduct." That might be relevant if Securitas was seeking contribution, i.e., an equitably apportioned share of the liability from

Affinion. It was not. Instead, Securitas settled its claim with Valente and sought indemnification to place the entire financial responsibility for the offensive acts of its own employee, Veneri, solely on Affinion by seeking both common-law and contractual indemnification.

Securitas specifically alleged that "Affinion had control over the situation that caused the plaintiff's alleged losses, to the exclusion of Securitas." As we explained in *Pellecchia*, "the situation" is best understood as "the condition of danger from which a foreseeable risk of harm to the [plaintiff] is claimed to have arisen . . . ." *Pellecchia* v. *Connecticut Light & Power Co.*, supra, 139 Conn. App. 775. In the present case, the trial court determined that "the dangerous condition that gave rise to [Valente's] alleged injuries is Veneri himself, not Affinion's alleged [delay] in disclosing or reporting the monitoring of Veneri on a hidden camera." Securitas contends that this determination missed the point because it was Veneri's *conduct* that caused the plaintiff's injuries, which were exacerbated by Affinion's delay in reporting the problems to Securitas. It argues that the dangerous condition was Affinion's failure to inform it of Veneri's behavior and the ensuing investigation. Securitas argues, therefore, that Affinion's month-long investigation of the harassing conduct directed toward Valente gave it exclusive control over Veneri, at least during that period of time. We disagree.

Contrary to assertions by Securitas, Affinion's investigation of the sexual harassment directed at Valente is not what caused the injuries she alleged. It was Veneri's conduct in leaving her letters requesting that she give him a pair of her underpants and making unwanted offensive comments about her physical attributes that caused her injuries, some of which occurred before there was any investigation. To the extent that Securitas claims that there is any meaningful distinction between a *person* and a *person's conduct*, it is not apparent to us. We therefore conclude that there is no genuine issue of material fact that the dangerous condition in this case was Veneri and his offensive letters and acts.[5]

### B

We next consider whether Affinion had exclusive control over the dangerous condition, i.e., Veneri. We agree with the trial court's conclusion that there was no genuine issue of material fact that Securitas exhibited *some* control over Veneri, its own employee. It hired him without input from Affinion. Securitas alone selected him to be placed as a guard in the building where Valente worked. It contractually had received the right to supervise him. As such, Affinion did not have *exclusive* control over the dangerous condition, namely, Veneri and his actions.

Our Supreme Court has defined "exclusive control" for present purposes as "exclusive control over the

dangerous condition that gives rise to the accident." *Skuzinski* v. *Bouchard Fuels, Inc.*, supra, 240 Conn. 706. The trial court cited the following uncontested facts for its conclusion that Securitas had not shown that Affinion had exclusive control over Veneri: "Affinion did not hire Veneri and did not participate in the hiring process. Affinion did not supervise Veneri. The guard services master agreement did not permit Affinion to supervise or control the security personnel placed in Affinion's offices by Securitas. Securitas had its own supervisory personnel on and off the Affinion premises." Indeed, Securitas did not argue that "Affinion had exclusive—or any—control over Veneri, or his performance of his duties . . . ." In light of these facts, we agree with the trial court that no reasonable jury could have concluded that Affinion exercised exclusive control over Veneri, to the exclusion of Securitas. Without "exclusive control," Securitas could not recover indemnification from Affinion. See *Kaplan* v. *Merberg Wrecking Corp.*, supra, 152 Conn. 416.[6]

Accordingly, the court's entry of summary judgment in favor of Affinion on Securitas' common-law indemnification claim was proper because there was no genuine issue of material fact that Affinion lacked exclusive control over the dangerous condition, namely, Veneri and his actions in Valente's office.

II

Securitas next argues that the trial court improperly rendered summary judgment on its claim for contractual indemnification. Specifically, it argues that a jury reasonably could find that Affinion must indemnify Securitas because Valente's claim "relates to" Affinion's grossly negligent investigation of Valente's allegations, which resulted in Securitas having to pay damages to Valente, and that, pursuant to the contract between Affinion's corporate predecessor and Securitas, the latter is entitled to indemnification. We are unpersuaded.

"The law governing the construction of contracts is well settled. When a party asserts a claim that challenges the trial court's construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . .

"Similarly, [w]e accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . Where the language is unambiguous, we must give the contract effect

according to its terms. . . . Where the language is ambiguous, however, we must construe those ambiguities against the drafter. . . . Moreover, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Citations omitted; internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 13–14, 938 A.2d 576 (2008).

The relevant contract provisions put the relationship between Affinion and Securitas in context. The contract requires Affinion to indemnify Securitas "from and against any and all losses, claims, damages, expenses, fees, settlements, penalties and attorneys' fees arising out of or resulting from any third party's claim *relating to* the gross negligence or willful misconduct by [Affinion]." (Emphasis added.) A second provision of the contract requires Securitas to indemnify Affinion "from and against any and all losses, claims, damages, expenses, fees, settlements, penalties and attorneys' fees arising out of or resulting from any third party's claim relating to (i) the gross negligence or willful misconduct by [Securitas], its employees or agents . . . ." In effect, these bilateral indemnification provisions aspire contractually to place financial responsibility on each contracting party for acts of gross negligence and wilful misconduct committed by each party's own employees.

The trial court proceeded to render summary judgment on Securitas' contractual indemnification claim because "the complaint fails to allege any claim of gross negligence or wilful misconduct against either party to the contract."

It has not been argued by Securitas, nor would it be the subject of reasonable debate, that Affinion committed any acts of intentional or wilful misconduct that would entitle Securitas to indemnification from Affinion for Veneri's sexual harassment of Valente. Instead, Securitas argues that summary judgment was inappropriate on its contractual indemnification claim because "a jury reasonably could find that Valente's suit against Securitas is a claim by a third party 'relat[ed] to' the gross negligence of Affinion." We disagree.

"Our Supreme Court has defined gross negligence as very great or excessive negligence, or as the want of, or failure to exercise, even slight or scant care or slight diligence . . . . It has defined wilful misconduct as intentional conduct designed to injure for which there is no just cause or excuse." (Citation omitted; internal quotation marks omitted.) *PIC Associates, LLC* v. *Greenwich Place GL Acquisition, LLC*, 128 Conn. App. 151, 158–59, 17 A.3d 93 (2011).[7]

Our review of both the complaint and the record

reveals that Securitas has failed to establish the existence of a genuine issue of material fact as to whether Affinion acted in a grossly negligent manner, within the scope of the contractual indemnification provision. Rather, the record before us demonstrates, convincingly, that Affinion diligently and thoroughly investigated the claims of harassment by Valente. The details of Affinion's prophylactic and investigatory efforts, described previously, need not be repeated. Therefore, given Affinion's efforts, no reasonable jury could have found that the manner in which Affinion investigated the sexual harassment of Valente was grossly negligent.

Even though, after Veneri left his first letter, Affinion notified Campbell to have his guards keep an eye on Valente's office, there is no provision in the contract between Affinion's corporate predecessor and Securitas that would obligate Affinion to report to Securitas the details of its investigation of Valente's complaints. Our Supreme Court recently held that "[t]here can be no actionable negligence . . . unless there exists a cognizable duty of care." (Internal quotation marks omitted.) *Cannizzaro* v. *Marinyak*, 312 Conn. 361, 366, A.3d (2014). Insofar as Securitas failed to establish that Affinion had a duty arising out of contract or a relationship of the parties to inform it of all of the details of Affinion's investigation of Valente's harassment complaint while the investigation was ongoing, Securitas cannot prove that Affinion was grossly negligent, thereby entitling it to contractual indemnification from Affinion. See footnote 4 of this opinion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Affinion is a holding company of Trilegiant Corporation. For present purposes, we will refer to them jointly as Affinion. The claim against the other defendant, Joseph Veneri, was withdrawn by the plaintiff.

[2] Securitas' apportionment claim is not raised in this appeal. The trial court rendered summary judgment in favor of Affinion on Securitas' apportionment claim. Securitas subsequently filed a motion to reargue and for reconsideration. Upon reconsideration, the trial court determined that its previous ruling on the apportionment count was erroneous and denied Affinion's motion for summary judgment on this count. Securitas and Affinion then filed a stipulation with the trial court that Affinion had no exposure to damages under this count because Valente did not assert any claim for damages against Affinion. Judge Mintz declined to rule on the stipulation when it was presented to him. Our Supreme Court has determined that a trial court's refusal to consider a party's motion is a final judgment for purposes of appeal. See *Ahneman* v. *Ahneman*, 243 Conn. 471, 478, 706 A.2d 960 (1998).

[3] Subsequent to the entry of summary judgment in favor of Affinion, Securitas and Valente settled the underlying action. Securitas and Valente filed a stipulation of dismissal, with prejudice, on Valente's claims against Securitas, "[p]ursuant to an agreement between the . . . parties . . . ." Valente later withdrew her claims against Veneri.

[4] "[T]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action. . . . Thus, [t]here can be no actionable negligence . . . unless there exists a cognizable duty of care. . . . [T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would

anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Cannizzaro* v. *Marinyak*, 312 Conn. 361, 366,      A.3d      (2014).

In the present case, the trial court based its common-law indemnification ruling on the third *Kaplan* requirement: exclusive control over the dangerous condition. That notwithstanding, additionally, we conclude that as a matter of law, Affinion had no duty to inform Securitas of every detail of its investigation of Valente's harassment. As such, Securitas would be unable to satisfy the first *Kaplan* requirement for common-law indemnification (proving that Affinion was negligent) because Affinion had no legal duty to further notify Securitas. Affinion's duty was to protect its employee, Valente, from a hostile work environment, particularly from sexual harassment from an unknown actor.

[5] The procedural posture of the present case distinguishes it from our decision in *Pellecchia*. This court reviewed *Pellecchia* upon the trial court's grant of a motion to strike the third party complaint. We reversed the trial court's judgment because the third party plaintiff had sufficiently *pleaded* the essential elements of common-law indemnification. *Pellecchia* v. *Connecticut Light & Power Co.*, supra, 139 Conn. App. 776. On a motion to strike, the trial court must examine the party's pleadings to determine if that party has pleaded a legally cognizable claim. See id., 774. If it has, the motion to strike should be denied. Id.

[6] Securitas' assertion that it had no notice of the investigation is belied by the undisputed fact that Securitas' employee, Campbell, admitted in his deposition that after the first note was left for Valente, Affinion asked Campbell to "keep an eye out for any suspicious activity" in the wing of the building where Valente worked and to "report to [Affinion] anything out of the ordinary that [he] saw." Furthermore, to the extent that Securitas argues that had Affinion notified it sooner of its investigation of Veneri, Securitas could have prevented or at least ameliorated Valente's injuries, this would be a potential basis for an apportionment claim. Securitas, however, abandoned its apportionment claim in the trial court; see footnote 2 of this opinion; and is now seeking to be fully indemnified by Affinion.

[7] Our Supreme Court has held that Connecticut does not recognize a cause of action for gross negligence as being distinct from simple or ordinary negligence. See *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 337, 885 A.2d 734 (2005). That notwithstanding, although our law does not recognize a separate tort action for gross negligence, parties may freely contract to indemnify for gross negligence and claim damages for an alleged breach.